HAAPA *v.* METROPOLITAN LIFE-INSURANCE CO.

1. LIFE INSURANCE—ACTION ON POLICY — EVIDENCE — PROOFS OF DEATH—ADMISSIBILITY.

   In an action on a life-insurance policy the proofs of death, be ing in the nature of admissions, are competent evidence.

2. SAME—WARRANTY—BREACH—WAIVER—KNOWLEDGE OF AGENT.

   A life-insurance company is not bound, as to its knowledge that assured's health is not in the condition stated in the application, by communications made to a soliciting agent who was under no duty to discover the facts, and whose authority in fact and as disclosed by his acts did not extend to receiving the application or any communication upon the subject.

3. SAME—WARRANTY—BREACH—WAIVER — ESTOPPEL TO ASSERT.

   A husband who procured insurance on the life of his wife with full knowledge that she was subject to heart disease and would die suddenly from it, cannot urge that the insurer, which in fact did not know the condition of the insured, is estopped to assert a breach of the warranty in the application with respect to the assured's health, by reason of communications made by him to the insurer's agent.

4. SAME—CAUSE OF DEATH—EVIDENCE—HARMLESS ERROR.

   Permitting the attending physician to testify to the cause of assured's death is harmless error where the fact was admitted and otherwise abundantly proved.

5. SAME—DIRECTION OF VERDICT—PROPRIETY.

   Testimony raising a conflict as to whether certain questions in the application were in fact asked assured by the medical examiner as stated does not render the direction of a verdict for defendant erroneous where it is undisputed that other questions, equally controlling on the rights of the parties, were put to assured, and both the policy and the application contained a provision that no liability should be incurred by the company unless the policy was delivered while the assured was in good health.

Error to Houghton; Streeter, J.   Submitted June 4, 1907.   (Docket No. 2.)   Decided December 30, 1907.

Assumpsit by Arthur Haapa against the Metropolitan

Life-Insurance Company on a policy of insurance. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*P. H. O'Brien*, for appellant.

*Chadbourne & Rees*, for appellee.

OSTRANDER, J. For more than a year before securing the policy of insurance, the insured had an incurable disease of the heart, of which fact and that she, on account of the disease, was liable to die suddenly, her husband, the beneficiary, was informed by the physician whom he had employed to treat her. She had been treated for this trouble in March and in October, 1904. The policy was issued in April, 1905, upon an application made therefor during the same month, and the application was made a part of the policy and a copy of it attached thereto. This disease resulted in her death in July, 1905. The beneficiary states, in the proofs of death, that the cause of death was heart disease, the physician certifies to the same fact and, also, that he attended her for the trouble in March and October, 1904, and in May, 1905, and that she had another physician in April, 1905, the month in which the policy was issued. The company denied liability upon the ground that the proofs of death showed that the policy was issued upon misrepresentations. The proofs of death, being in the nature of admissions, were competent evidence (*John Hancock Mut. Life Ins. Co.* v. *Dick*, 117 Mich. 518 [44 L. R. A. 846]; *Wasey* v. *Insurance Co.*, 126 Mich. 119; *Krapp* v. *Insurance Co.*, 143 Mich. 369), and the facts recited are uncontradicted. The policy was not issued by the resident agent and solicitor of defendant, and was issued at the home office upon the application made by the insured, by the terms of which the deceased warranted that she had never had disease of the heart, that she was in sound health, that she had not within two years been under the care of a physician. The application contains an express

limitation of the powers of the agent.   In the policy itself is the provision:

"No obligation is assumed by the company * * * unless, upon the delivery of this policy, the insured is alive and in sound health."

To meet the condition existing after the application and the proofs of death had been admitted in evidence, plaintiff was recalled and asked the following questions, answers to which were excluded:

"*Q.* Now, state to the court and jury, whether you had any conversation with Mr. Warrala [the agent of defendant who solicited the insurance] relative to your wife becoming insured in this company prior to her becoming insured. * * *

"*Mr. O'Brien:* This is material, if your honor please, for the purpose of showing that before this insurance was taken up Mr. Warrala was informed and well knew the physical condition of Mrs. Haapa and that at the time that this application was made he was a witness to the application and the agent of the company that presided over the making of the application for the policy and the agent who solicited the insurance, and that he wrote down whatever answers were made; that Mrs. Haapa did not talk English, and did not read or write English, and that she signed whatever he put on the paper at his solicitation. * * *

"*Q.* State whether you have had any conversation about your wife's physical condition with Warrala just before this application was taken. * * *

"*Q.* Did you have any talk with Mr. Warrala in which it was stated to him by yourself that you didn't feel that your wife's physical condition was such that she could get insurance and that he knew it? * * *

"*Q.* Now, on the day that the insurance was taken or at any time before within two or three days, the day the application was made or any day within two or three days before, did you talk with Mr. Warrala about your wife becoming insured in this company? * * *

"*Q.* Before this application was made state whether Warrala talked with you about insuring your wife. * * *

"*The Court:* The ruling of the court is broad enough to exclude all conversations between the agent of the

Metropolitan Life-Insurance Company, and the witness prior to the date when the application was made, and you will have an exception, so you need not take up any more time asking particular questions. That covers the whole case."

It is said in the brief that the object of the testimony sought to be elicited was to show—

"That the agent of the defendant who solicited the insurance knew the physical condition of the assured, in order to show that the defendant waived the right to rely on the warranties as to her physical condition, and as to the nonexistence of heart disease."

And, again:

"The purpose of this testimony was not to vary the contract, but simply to show that with full knowledge of the physical condition of the insured, the defendant decided to issue the policy."

The theory of counsel, as indicated by these statements and by the authorities cited, is not supported by the facts. The undisputed facts are that on April 10, 1905, the insured signed a paper, reading:

"I intend to make application to the Metropolitan Life-Insurance Company upon the following blank form, and do hereby sign my name in the presence of the company's agent, who will make report to the company upon the proposed risk, so that my signature to the application may be identified.

"EMMA S. HAAPA,
"Signature of Proposed Applicant.
"J. E. WARRALA,
"Signature of Witnessing Agent."

She, at this time, made and signed no other paper. The agent made a report which contains nothing material here. It contains the full name of the applicant, the name and relationship of the proposed beneficiary, the amount of the indemnity, of the semi-annual premiums, the sex, color, date and place of birth, age, post-office address, etc., of the applicant. The deceased was asked to make and made no representations whatever concerning

her health or physical condition. The single question relating to this subject is addressed to the agent and is: "Does the person appear to be a good risk in every respect and do you recommend that a policy be issued?" This was answered, "Yes." This report was filed in the local office, and later, on April 14th, the examining physician visited the applicant, and on that day the application to the defendant company was made and signed by the insured. It was upon the "blank form" referred to in the paper which the insured had already signed. In it are the warranties, breaches of which are relied upon. There was but one application relied upon by the company. It was made April 14, 1905, and the solicitor, Warrala, was not present. It was the physician who filled in the application. According to his testimony, all of the questions contained in the application were put to the insured, an interpreter who spoke the language of the insured being employed for that purpose. The insured afterwards signed it. No one claims that the husband and beneficiary had ever told the examining physician that his wife had heart disease. The question presented is, then, whether the fact, if it is a fact, that the solicitor, Warrala, who had nothing whatever to do with making the application, was told by the husband and beneficiary that his wife had heart disease, requires that his knowledge so obtained should be, for any purpose, imputed to the defendant. It is clear that the defendant did not, in fact, know of any representations concerning the health of the assured except those contained in the application. Those representations were, admittedly, false. They were material; so much so that it may be assumed that if the truth had been told no policy would have been issued.

The rule of *North American Fire-Ins. Co.* v. *Throop*, 22 Mich. 146, is that,—

"If there has been no fraud and no concealment, but a full and frank statement of all the facts, and the insurer has framed the papers to suit himself, in view of all the circumstances, the law would justly be subject to the re-

proach of favoring deception and fraud, if the insurer was allowed to retain the premium, and at the same time repudiate the contract, for his own failure to make its recitals correspond exactly with the facts."

In that case, it appeared that,—

"The plaintiff claims that he gave the agent full information on the subject [of incumbrances], and insists that if there was any failure to mention it in the application, it was for reasons operating exclusively upon the mind of the agent, and not affecting his own action. We think evidence of these facts was competent. Its purpose was, not to vary or contradict the contract of the parties, but to preclude the party who had framed it from relying upon incorrect recitals to defeat it, when he himself had drafted those recitals, and was morally responsible for their truthfulness."

It is pointed out in the opinion that,-

"Where the particular fact called for by an interrogatory is unimportant, or nearly so, under the circumstances of the particular case, it is very easy for the assured to be led to suppose that such interrogatory, which he knows was prepared generally and for the purpose of meeting the cases in which it would be of practical importance, was not to be relied upon in his own case, and if the insurer himself, or his agent, drafts an answer to such interrogatory, in which he treats it as immaterial and does not observe strict accuracy in his statement of facts, the assured might well suppose he would be thought captious and hypercritical if he should insist upon answers exactly correct, when the party seeking the information, and who alone was interested in it, was satisfied with statements less accurate, and which, with full knowledge of the facts, he had written out to suit himself."

In *Brown* v. *Insurance Co.*, 65 Mich. 306, the rule followed, so far as it is material here, is that whether or not the applicant made the answers to the agent as written in the application was a question for the jury. If she made them, their truth or falsity should have been inquired into. If she did not make them or any of them and they were filled in after she signed the application, without her knowledge or consent, as to answers so in-

serted the company was precluded from relying upon their falsity. In the following cases and others, the knowledge of the agent who took the application, of facts untruthfully stated in the application, is the point considered: *Perry* v. *Insurance Co.*, 143 Mich. 290, 147 Mich. 645; *Van Houten* v. *Insurance Co.*, 110 Mich. 682; *Temmink* v. *Insurance Co.*, 72 Mich. 388; *Beebe* v. *Insurance Co.*, 93 Mich. 514 (18 L. R. A. 481). In *O'Brien* v. *Insurance Co.*, 52 Mich. 131, there was an alleged failure to inform the agent of an incumbrance upon the insured property. There was no written application and no preliminary examination of the applicant by the agent. It is said:

"If an insurer is apparently indifferent whether a property is unincumbered and is content to insure without in any way suggesting an interest in the question, the bare silence of the applicant upon it cannot be deemed a misrepresentation. If the applicant is guilty of no misleading conduct, the insurer in such a case must be taken to assume the risk incident to the undisclosed incumbrance. It must not be intended that the principle would hold in regard to incidents obviously implying unusual risks, and not likely to be discerned or contemplated by the insurer. The case requires no observations on that subject. It is sufficient to suggest the distinction."

It is said, further, in *Ketcham* v. *Accident Ass'n*, 117 Mich. 521, 523:

"The courts have always been anxious to take care of the rights of the assured when the applicant has relied upon the agent informing the company what had been truthfully told to him about the character of the risk; but the courts never have said the company is bound by statements contained in an application, when not only the agent, but the assured, knows they are untrue, and calculated to deceive, and the application is to be forwarded to the company as the basis of its action. To so hold would put these organizations completely at the mercy of dishonest and unscrupulous agents."

The decisions of this court are not conflicting and must be read and considered together for the purpose of discovering and following the rule of law applicable to the

question under consideration. Assuming that the testimony sought to be elicited would have tended to prove that the husband had informed the soliciting agent, Warrala, that his wife had heart disease and was liable to die suddenly on account thereof, there are two sufficient reasons why such testimony should not have been received. In the first place, the disclosure claimed to have been made was not made to the agent of defendant whose duty it was to discover the facts, but to one whose authority as disclosed by his acts, and whose authority in fact, did not extend to receiving the application or any communication upon the subject. Mere silence on the part of such an agent cannot be held to estop the defendant where afterwards the person insured represented to another agent, charged with the duty of receiving the application for insurance, facts upon which the defendant acted in issuing the policy. In the second place, the plaintiff who urges the estoppel or waiver does so from a position which for that purpose the law will not permit him to occupy. He sought indemnity for the death of his wife. The physician had told him, "she would have those spells off and on and that she would die suddenly some time."

He owed some duty to know that the defendant did not, in ignorance of that fact, sell him the indemnity. The contract of indemnity was itself notice to him that the defendant did not possess such notice or knowledge and would be defrauded if required to pay. The cases of *Gristock* v. *Insurance Co.*, 87 Mich. 428, and *Hartford Steam Boiler Inspection & Insurance Co.* v. *Cartier*, 89 Mich. 41, have no application.

The ruling upon the question asked the witness Dr. Yarrington was not prejudicial error. He was the attending physician, who made the certificate which was a part of the proofs of death. He was asked: "What was the matter with her, what was the cause of her death?" Over objection, he was permitted to answer: "Heart failure, from failure of compensation causing mitral insufficiency. That would come within the general disease

called disease of the heart or heart failure." This fact was and is admitted. It was already proven.

A witness, a neighbor, who claimed to have been present when the examining physician took the application, testified that the assured was not asked whether she had been attended by a physician within two years, or whether she had heart disease. It is contended that in view of this testimony, which is disputed, it was error to direct a verdict for defendant. This upon the theory that a question of fact was presented upon the subject of the knowledge of the assured that she had made, in signing the application, any warranties concerning either of those subjects. But the testimony is not disputed that other questions contained in the application were put to her, in her own language. One affirmation is, "I am now in sound health." Another, "I have never met with any serious personal injury, nor ever been seriously ill, except as stated below." Another, "The following is the name of the physician who last attended me, the date of the attendance, and the name of the complaint for which he attended me." And the application, like the policy, contains the provision (agreed to in the application) that no liability shall be incurred by the company unless the policy is delivered while the assured is in good health. Beyond this, the examination which was made apprised her of its purpose—of the knowledge sought. And her physician had informed her of her ailment. In my opinion, a finding that these specific questions were not asked her and that she could not read the application which she signed would not, in view of the other testimony and of the knowledge which the nature of the examination conveyed, support a recovery. It follows that, upon the whole record, the trial court committed no error in directing a verdict for defendant.

The judgment is affirmed.

CARPENTER, GRANT, BLAIR, and MONTGOMERY, JJ., concurred.