METROPOLITAN LIFE INSURANCE CO. *v.* FREEDMAN.[1]

1. INSURANCE—ANNULMENT OF POLICY FOR FRAUD — FRAUD — IN-
    JUNCTION.

    A policy of insurance procured by the beneficiary named in it
    on the life of his father, under false representations made as
    to the age of the insured and as to the rejection of insurance
    by other companies, may be annulled in equity at the suit
    of the insurer, and an action at law on the policy enjoined.

2. SAME—FRAUD—EVIDENCE OF INTENT.

    The acceptance and retention by the insured of a policy which
    contains a copy of the false representations made in the ap-
    plication for insurance furnishes evidence of a fraudulent in-
    tent.

3. SAME—CONSPIRACY—FRAUD.

    The fact that false representations as to the rejection of the
    deceased by other companies were made by the agent for a
    company which had accepted the deceased as a risk, is not a
    defense to such suit in favor of the beneficiary who knew of
    the falsity of the statements and conspired with the agent to
    secure the policy.

4. SAME— RESCISSION — RETURN OF PREMIUMS — FORFEITURE PRO-
    VISIONS.

    Premiums paid upon a policy in which a clause was incorpo-
    rated providing that they should be forfeited in case the ap-
    plication contained fraudulent representations, should be re-
    turned if the policy is rescinded by the decree, although
    they could not be recovered in an action by the insured.

5. EQUITY—MAXIMS.

    He who seeks equity must do equity.

Appeal from Wayne; Rohnert, J. Submitted October
14, 1909. (Docket No. 33.) Decided December 10, 1909.

Bill by the Metropolitan Life Insurance Company
against Louis Freedman, executor of the last will and tes-
tament of Jacob Freedman, deceased, for the cancellation
of a policy of insurance, and to restrain an action at law.

[1] Rehearing denied February 3, 1910.

From a decree for complainant, defendant appeals. Modified and affirmed.

*Haug & Yerkes* (*Maybury, Lucking, Emmons & Helfman,* of counsel), for complainant.

*Sloman & Sloman,* for defendant.

BROOKE, J. Complainant files its bill to procure the cancellation and delivery of a policy of insurance issued by it upon the life of Jacob Freedman, and to enjoin the further prosecution of a suit at law upon said policy, pending at the time the bill was filed. From a decree in favor of complainant, defendant appeals.

It is claimed by the complainant that the policy in question was fraudulently obtained from it at the instance of Louis Freedman, a son of the deceased, executor of his estate, and sole beneficiary of the insurance, under his father's will. The fraud complained of is, that in the application for insurance the deceased made false statements (1) as to his age; (2) as to rejections by other companies; (3) as to his health. The record is very voluminous. We believe that to exhaustively analyze the testimony, pro and con, upon a disputed question of fact, would be of no value to the profession. It has, however, been examined with care, and from such examination we think it conclusively appears that, at the time the application was written, Jacob Freedman was many years past the age of 59 (the age given in the application). It further appears that applications for insurance on his behalf had been rejected by other insurance companies prior to the date of the application for insurance in the complainant company. His application to the Metropolitan Company contained a representation and warranty to the contrary.

It is urged on behalf of the defendant that the deceased was an ignorant man, of foreign birth, quite unable to read or write the English language, and speaking it but brokenly, and therefore it is not probable that he ever

knew of the fraudulent character of the representations contained in the application, or made them wilfully and with intent to deceive. We do not think this position is tenable. It makes little difference in our opinion whether Jacob Freedman himself actually knew that the statements contained in this application, signed by him, were false, or ignorantly permitted himself to be used by his son Louis as a tool for the accomplishment of a fraud. The real defendant in this cause is Louis, the son, and it is entirely clear that he knew that his father's age was greater than was represented, and that other insurance had been refused. This is apparent from the fact that the applications which were rejected were made at the instance of Louis, and in them he was named as beneficiary. In any event, a complete copy of the application (containing the false representations) was set out on the third page of the policy, which was in the possession of either Jacob, the insured, or Louis, his son, from the time it was issued until Jacob died. It was Jacob's duty to *know* that the representations therein contained, and which constituted the inducement for the issuance of the policy, *were true*, and his silence during the life of the policy is persuasive proof of a fraudulent intent. *Cleaver* v. *Insurance Co.*, 65 Mich. 527 (32 N. W. 660, 8 Am. St. Rep. 908); *Haapa* v. *Insurance Co.*, 150 Mich. 467 (114 N. W. 380, 16 L. R. A. [N. S.] 1165, 121 Am. St. Rep. 627); *Genrow* v. *Modern Woodmen*, 151 Mich. 250 (114 N. W. 1009); *New York Life Ins. Co.* v. *Fletcher*, 117 U. S. 519 (6 Sup. Ct. 837); *Maier* v. *Life Ass'n*, 78 Fed. 566 (24 C. C. A. 239).

The defendant sought to show that the complainant had actual knowledge of the rejections, or might have learned of them by exercising reasonable diligence before issuing the policy, or, at any rate, before accepting the second premium.

It is urged, therefore, that complainant is estopped from setting up defendant's fraud, particularly in view of the fact that complainant accepted a second premium

when it knew, or might have known, the facts now relied upon by it. This contention would have force if the proofs sustained it. We are of the opinion that they do not. One Newton Burnham, an agent for the John Hancock Insurance Company, after insuring Jacob Freedman in his own company, seems to have aided Louis Freeman in the attempt to secure additional insurance on Jacob's life. In furtherance of that design, he notified soliciting agents of other companies (including complainant) that policies might be written on Jacob's life. He undoubtedly did this in some instances after he knew that insurance had been refused, but he was not the agent of the complainant, and owed it no duty. He did communicate the fact of the rejections to Louis, and, after such knowledge was communicated to Louis, he (Louis) caused further applications to be made. It would, we think, be a novel doctrine to permit Louis to urge the fraud of his co-conspirator in excuse or palliation of his own wrongdoing.

Paragraph 11 of complainant's bill is as follows:

"That the first two annual premiums upon said policy were paid to your orator, and such payments amount to the sum of $421.60, and notwithstanding that said policy provided that, if any statement in the application herein referred to is not true, all premiums paid shall be forfeited to the company, and, notwithstanding your orator is lawfully entitled to retain said premiums, yet your orator is now ready to tender into court the sum of $421.60, and which sum the complainant is now ready to pay to the said Louis Freedman, executor, when so directed by this court; and your orator hereby offers to pay and tenders the same unto the register of this court, to be paid to the said defendant, Louis Freedman, executor, when so directed by this court."

The last paragraph of the decree in the circuit court is as follows:

"It is further decreed that said policy is by this court declared to be null and void on account of fraud; therefore, that premiums shall be retained by the said complainant, but that no costs shall be awarded in this cause to either party."

We are of the opinion that in the disposition of the premiums paid the learned circuit judge was in error. While it is true that where the policy is obtained by means of fraudulent misrepresentations, the premiums cannot be recovered back by the insured (see 2 May on Insurance [4th Ed.], § 567, and cases cited), we think a different rule obtains where the company seeks to avoid the contract on the ground of fraud. In that event, the complainant must recognize the maxim that he who seeks equity must do equity. It would, indeed, be strange, if the complainant could say:

"This contract was obtained from me by fraud. Therefore, it is void—void, except as to the provision therein contained that, in the event of fraud, the premiums paid should be retained by the company. As to that provision, it is valid."

No authorities need be cited to show the untenable character of such a claim. At the time the bill was filed the complainant itself recognized this fact, and it cannot now be heard to urge the contrary. The complainant should have recovered costs in the court below.

The decree of the circuit court will be modified, in that the complainant will be required to repay the amount of the two premiums collected, with interest thereon from the date of filing its bill. Complainant will recover costs of the circuit court to be taxed.

Defendant will recover costs of this appeal.

BLAIR, C. J., and GRANT, MOORE, and McALVAY, JJ., concurred.