SOVEREIGN CAMP WOODMEN OF THE WORLD v. LILLARD et al. †
(No. 5384.)

(Court of Civil Appeals of Texas. Austin. June 17, 1914. Rehearing Denied Feb. 24, 1915.)

1. INSURANCE ☞723—MUTUAL BENEFIT INSURANCE—STATEMENTS IN APPLICATION.

Where the application to a fraternal insurer contained a provision whereby the applicant warranted that all representations were true, false representations as to his use of intoxicants and previous medical history will avoid the certificate, where they were such that it would not have been issued had the truth been told.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1859–1865; Dec. Dig. ☞723.]

2. INSURANCE ☞723—MUTUAL BENEFIT INSURANCE—APPLICATIONS.

It is the duty of one applying for a policy to be issued by a fraternal insurer to read over the answers written in the application before signing, and, in case of failure to read over such application, the applicant is bound by the answers as written.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1859–1865; Dec. Dig. ☞723.]

3. INSURANCE ☞695—MUTUAL BENEFIT INSURANCE—EXAMINING PHYSICIANS.

A private physician who, in the absence of the regular examiner, examined the applicant for a policy to be issued by a fraternal insur-

er is not the agent of the insurer, where he was procured by a friend of the applicant.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1836; Dec. Dig. ☞695.]

4. INSURANCE ☞724—MUTUAL BENEFIT IN-
SURANCE—LIABILITY OF INSURER.

Where the certificate issued by a fraternal insurer, which was referred to in the application, provided that no local officer or employé was authorized to waive any of the conditions of the certificate or by-laws, a medical examiner, by falsely answering questions in the application, which was signed by the applicant, and which declared that the applicant warranted the truth of all representations therein, cannot estop the insurer from relying on the falsity of such representations to avoid the policy; such action being without the scope of the examiner's authority.

[Ed. Note.—For other cases, see Insurance, Cent.Dig. §§ 1837, 1866–1868; Dec.Dig. ☞724.]

Appeal from District Court, Hamilton County; J. H. Arnold, Judge.

Action by J. W. Lillard and another against the Sovereign Camp Woodmen of the World. From a judgment for plaintiffs, defendant appeals. Reversed and rendered.

Lattimore, Cummings, Doyle & Bouldin, of Ft. Worth, for appellant. Eidson & Eidson, of Hamilton, for appellees.

RICE, J. On the 22d day of August, 1910, appellant issued to E. P. Lillard, now deceased, a certificate of insurance for $2,000; his mother, Mrs. W. A. Lillard, being named as beneficiary therein. He died on the 10th day of April, 1912, at which time he had paid all dues, assessments, etc., and was a member in good standing in said order. Proofs of death having been made, and refusal of payment on the part of appellant, this suit was brought by his mother, joined by his father, J. W. Lillard, to recover the amount named in said certificate.

The appellant based its defense chiefly on the contention that E. P. Lillard, the deceased, in his application, made certain statements which he warranted to be true, and upon the faith of which the appellant acted in issuing the certificate, all of which it is alleged were material to the risk. These were: First, that he had never had fits or convulsions or any other disease or injury; second, that he had not consulted or been attended by a physician for any disease during the past five years; and, third, that he did not drink wine, spirits, or malt liquors of any kind or in any quantity—all of which statements were alleged to be untrue, and known by the insured to be so at the time he made them.

Appellees contend, however, that neither they nor the insured were bound by said statements, because the physician who made the examination of deceased failed to ask him any of the above questions, but wrote the answers thereto himself in said application and he (deceased) signed said application in ignorance of its contents, never having read it over, and was therefore not bound

thereby. Besides, appellees allege that said physician was the camp physician and agent of appellant, for which reason it waived such defense, and was estopped to urge it.

There was a trial before the court without a jury, resulting in a judgment in favor of appellees in the sum of $1,500, from which this appeal is prosecuted.

The first four assignments question the correctness of the judgment on the ground, that by the express terms of the beneficiary certificate, it was provided that it should be forfeited in the event any of the statements and declarations contained in the application for membership, and upon the faith of which the certificate was issued, were shown to be untrue. The deceased was solicited to become a member of the Woodmen of the World, and, a formal application for such admission having been favorably considered by the local camp, he, together with a friend, one Hammack, went to the office of the local camp physician for examination, but found him absent. They then sought a private practitioner, who made the examination for him and wrote out the answers to the questions and certified to their correctness, after which the deceased, though above average intelligence, and able to read and write, signed same without reading it. The other questions in the application, relating to the age of the parents and grandparents of the deceased, were read over to him, and his answers thereto written down; and, while there is some conflict in the evidence as to whether or not the second question above set out was read over to the insured before his answer thereto was written down by the physician, there seems to be none as to the other two questions, it appearing that the answers thereto were made by the physician himself, without reading them over to the insured. There was testimony to the effect that this physician had been previously applied to by Hammack to know whether or not deceased could pass the examination, on the ground that it was generally known that he had had epileptic fits, and the physician assured Hammack that, if he made the examination, deceased would get through. This, however, was denied by the physician, but the court found that, while said physician may not have known of Lillard's condition from having seen him have a fit, yet that he had heard and knew of the same by general repute.

The proof establishes beyond controversy that, for a number of years prior to this examination, Lillard had indulged in drinking intoxicating liquors; that he had had and was subject to epileptic fits; and that he had consulted a physician within less than five years from the date of such examination relative to such disease, who had advised him that he had epileptic fits, and that he should quit drinking, so that the answers to each of said questions were shown

to have been untrue. The Sovereign Physician of appellant testified that no certificate could be issued by said order until he had approved the application therefor; that he did approve and pass upon the application of E. P. Lillard; that, if said application had contained the answer "Yes" to either of the questions above set out, he would not have approved the application or authorized the issuance of the certificate. It was shown that Lillard during the examination observed the physician in writing down and filling out the blanks, and writing the answers to the questions above set out. Over the signature to his application was the following:

"I hereby certify, agree and warrant that all the statements, representations and answers in this application, consisting of two pages, as aforesaid, are full, complete and true, whether written by my own hand or not."

The beneficiary certificate sued upon specifically referred to the application, and contained the following statement:

"If any of the statements or declarations in the application for membership, and upon the faith of which this certificate was issued, shall be found in any respect untrue, this certificate shall be null and void, and of no effect, and all money which shall have been paid, and all rights and benefits which shall have accrued on account of the certificate, shall be absolutely forfeited without notice or service."

It also provided that the constitution and laws of the order should be part of the contract. The constitution and laws of the order, among other things, provided:

"Sec. 26a. Applications must be approved by the Sovereign Physician before the beneficiary certificate shall be issued, and he shall have power to determine the amount of benefits. Applications that bear evidence of irregularities or indicate physical unsoundness shall be rejected."

Section 60: "This certificate is issued in consideration of the representation, warranties and agreements made by the person named herein in his application to become a member," etc.

The application likewise contains the following provisions:

"I agree that any untrue statements or answers made by me in this application or to the examining physician, or any concealment of facts in this application or to the examining physician, intentionally or otherwise, * * * or if I fail to comply with the laws, rules and usages of the order now in force or hereafter adopted, my beneficiary certificate shall become void, and all rights of any person or persons thereunder shall be forfeited."

It appears that, while Lillard did not request to see or read the application or paper from which said physician propounded the questions to him at the time he examined him, no one prevented him from doing so; nor was the application falsely read, or any misstatements as to its contents made to him by the physician, or any one else, before his signing same.

[1] The law seems to be settled in this state that, under the circumstances disclosed by this record, the court erred in rendering judgment against appellant. The statements in the application were material, and without which the risk would not have been assumed by the order. See Prætorians v. Holmig, 100 Tex. 623, 103 S. W. 477; Id., 105 S. W. 846; Security Mut. Co. v. Calvert, 39 Tex. Civ. App. 382, 87 S. W. 899; Equitable Life Ins. Co. v. Hazlewood, 75 Tex. 338, 12 S. W. 621, 7 L. R. A. 217, 16 Am. St. Rep. 893; Scottish Union Ins. Co. v. Wade, 127 S. W. 1186; Supreme Ruling Mystic Circle v. Hansen, 153 S. W. 351; Supreme Council v. Gambati, 29 Tex. Civ. App. 80, 69 S. W. 114; Supreme Lodge v. Payne, 101 Tex. 449, 108 S. W. 1160, 15 L. R. A. (N. S.) 1277; Ætna Ins. Co. v. Holcomb, 89 Tex. 404, 34 S. W. 915; Guinn v. Insurance Co., 31 S. W. 566; Morrison v. Insurance Co., 69 Tex. 353, 6 S. W. 605, 5 Am. St. Rep. 63; Fitzmaurice v. Mutual Life, 84 Tex. 61, 19 S. W. 301; Delaware Ins. Co. v. Harris, 26 Tex. Civ. App. 537, 64 S. W. 867; Ash v. Fidelity Mutual, 26 Tex. Civ. App. 501, 63 S. W. 944; Sovereign Camp W. O. W. v. Gray, 26 Tex. Civ. App. 457, 64 S. W. 801.

In Equitable Life Ins. Co. v. Hazlewood, supra, it was held that one warranting statements in the application to be true, whether written by himself or not, is bound by a false statement written by another in such application, and such statement, if shown to be false, avoids the policy.

"One signing application warranting answers and statements to be true, agreeing that such answers should be the basis of the contract, if such statements are shown untrue, the court should have instructed a verdict for defendant."

See Supreme Lodge Knights and Ladies of Honor v. Payne, 101 Tex. 449, 108 S. W. 1160, 15 L. R. A. (N. S.) 1277; Mutual Life Co. v. Pinson, 94 Tex. 555, 63 S. W. 531.

In Supreme Mystic Circle v. Hansen, supra, it is held, as shown by the syllabus, that false representations in a petition for reinstatement in a mutual benefit association will avoid the insurance when material, though ignorantly made, especially where their truth is expressly warranted, and made a condition precedent to the issuance of the insurance contract.

In Ætna Ins. Co. v. Holcomb, supra, it is held that the insured is bound by the terms of his policy, whether he knows them or not, when no facts are shown which would prevent his knowing same.

In Morrison v. Insurance Co., supra, it was held that every person capable of making a contract, in the absence of fraud, misrepresentation, etc., is held to know the words used in such contract, their meaning and legal effect.

In Fitzmaurice v. Mutual Life, supra, it was said that the binding force of statements and answers cannot be avoided by evidence that the applicant did not know the contents of the application.

In Delaware Ins. Co. v. Harris, supra, it is said, when insured is put upon notice that certificate is issued on statements in application, he must see that answers and statements

are correctly recorded, and, if he fails to do so, cannot claim estoppel.

In Ashe v. Fidelity Mutual, supra, it is held that statements to the effect that the insured has not been attended by a physician within a certain time are material, and, if false, would render the policy void. To the same effect is Sovereign Camp v. Gray, supra.

[2] Notwithstanding the statements were material and untrue, and the insured warranted them to be true, and the policy was issued upon the faith thereof, still appellees contend that neither he nor they was or are bound thereby, for the reasons: First, that he did not write the answers to said questions, but the same were written by the physician, and that he signed the application without reading it; and, second, it is also urged by them that the physician was the agent of the company, whereby appellant waived said provisions of the policy regarding its forfeiture, and is estopped thereby.

With reference to the first contention, it seems clear, under the authorities, that it was the duty of the insured, before signing the application, to read the same over, which, if he had done in this instance, would have disclosed to him the misstatements therein made, and it would have been his duty to have them corrected. Failing to do this, he was guilty of negligence, which, it seems to us, would bar any right to recover under the certificate. In Ryan v. World Mutual Life Ins. Co., 41 Conn. 168, 19 Am. Rep. 490, it is held that the signing of an application without reading it or hearing it read is inexcusable negligence, and that the party is bound to know what he signs. This case is quoted from and cited with approval in N. Y. Life v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837, 29 L. Ed. 934. See, also, Delaware Ins. Co. v. Harris; Ætna Insurance Co. v. Holcomb; Supreme Ruling, etc., v. Hansen; Fitzmaurice v. Mutual Life Ins. Co., supra.

[3] Concerning the second contention, the record discloses, we think, that the physician who prepared the application was not the agent of the company, and the insured knew this at the time he signed the application.

[4] But apart from this, even if the physician was the agent of the company, under the certificate he had no authority to waive any of the conditions upon which it was issued. The certificate which is referred to in the application has a clause reading:

"No camp nor officer thereof, nor any officer, employé, or agent of the Sovereign Camp, has authority to waive any of the conditions of this benefit certificate, or of the constitution or laws of the order."

These are sufficient reasons, we think, within themselves, to defeat appellees' contention in this respect. In addition thereto, however, even if the physician who took the application should be regarded as the agent of the company, still this fact could not be relied upon to sustain appellees' position, because

the court found as a fact that at the time of the application and medical examination of the insured, the acting camp physician was fully advised of the facts as to the deceased's history; that is, he knew about his fits or spells, knew that he drank, and knew the extent of his drinking. It was therefore incumbent upon him to disclose these facts in said answers. In Ryan v. World Life Ins. Co., supra, where the agent of the company (whose authority was limited to receiving and forwarding applications, countersigning and delivering policies approved by the company, and collecting premiums) fraudulently put down answers to interrogatories in an application which were untrue in themselves and were not in fact answers given by the applicant, and which application the insured signed without reading, it was held that the company was not bound by the policy issued upon such application; the court saying, among other things:

"In this case we are asked to go further than any case has yet gone, and clothe the agent with an authority not given him in fact, and to hold the principal responsible for an act which could not by any possibility have been contemplated as being within the scope of the agency. In most, if not in all, of the cases in which the act of the agent has been regarded as the act of the principal, the act has been the natural and probable result of the relations existing between the parties, or so connected with other acts expressly authorized as to afford a reasonable presumption that the principal intended to authorize it. But it cannot be supposed that these defendants intended to clothe this agent with authority to perpetrate a fraud upon themselves. That he deliberately intended to defraud them is manifest. He well knew that, if correct answers were given, no policy would issue. Prompted by some motive, he sought to obtain a policy by means of false answers. His duty required him not only to write the answers truly as given by the applicant, but also to communicate to his principal any other fact material to the risk which might come to his knowledge from any other source. His conduct in this case was a gross violation of duty, in fraud of his principal, and in the interest of the other party. To hold the principal responsible for his acts, and assist in the consummation of the fraud, would be monstrous injustice. When an agent is apparently acting for his principal, but is really acting for himself, or third persons, and against his principal, there is no agency in respect to that transaction, at least as between the agent himself or the person for whom he is really acting and the principal."

The court further says:

"In the second place, if the rule is to be applied to this case, it is by no means certain that it will aid the plaintiff. The fraud could not be perpetrated by the agent alone. The aid of the plaintiff or the insured, either as an accomplice or as an instrument, was essential. If she was an accomplice, then she participated in the fraud, and the case falls within the principle of Lewis v. Phœnix Mut. Life Ins. Co., 39 Conn. 100. If she was an instrument, she was so because of her own negligence, and that is equally a bar to her right to recover. She says that she and her husband signed the application without reading it and without its being read to them. That of itself was inexcusable negligence. The application contained her agreements and representations in an important contract. When she

signed it, she was bound to know what she signed. The law requires that the insured shall not only, in good faith, answer all the interrogatories correctly, but shall use reasonable diligence to see that the answers are correctly written. It is for his interest to do so, and the insurer has a right to presume that he will do it. He has it in his power to prevent this species of fraud, and the insurer has not."

While there is no evidence in the instant case tending to show that the deceased knew that false answers were written in said application, yet he was the instrumentality by and through which these statements were given potentiality. If he had read the instrument, which it was his duty to do, he would have discovered that his answers were untrue; and failure to do this was such negligence as to defeat the right of recovery by his beneficiary in said certificate. In this particular the Ryan Case is cited and quoted with approval in the case of N. Y. Ins. Co. v. Fletcher, supra. To the same effect is the decision of Mr. Justice Jenkins in Modern Woodmen of America v. Owens, 130 S. W. 858, wherein an application was signed, warranting that the applicant was in good health. It was returned for correction later. At the time the corrections were made, the applicant was seriously ill, which fact was known to the local physician. It was insisted that the knowledge of the local physician in this regard was the knowledge of the company, and that, by thereafter approving his application and issuing the certificate, it waived the condition of the application. The court said:

"If the answers in said application are to be treated as having been made as of the date of correction of said certificate, and Owens then had typhoid fever, as both he and the local physician well knew, and he answered that he was not sick, and the physician certified that his answers were true and approved the application, such act was a fraud upon the company, in which the applicant knowingly participated, and would not have been within the scope of such physician's authority, either actual or apparent."

In Supreme Lodge v. Payne, supra, Mr. Chief Justice Brown held that where the medical examiner did not put down the answers exactly as given, but wrote his own conclusions, the company was not estopped from questioning the falsity of the statements, and held the policy void, and said that a peremptory instruction should have been given for defendant.

The above cases, we think, are decisive of the questions here raised, and from them we feel justified in holding that, even if it be conceded that the physician who made the examination was acting as agent of the company, still the company was not bound, under the circumstances of this case. The case seems to have been fully developed. Therefore it becomes our duty to reverse the judgment of the court below and here render the same in favor of appellant; and it is so ordered.

Reversed and rendered.

---

⊘—For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes