## TEXAS STATE MUT. FIRE INS. CO. v. RICHBOURG. (No. 486–3881.)*

(Commission Appeals of Texas, Section "A." Jan. 16, 1924.)

1. **Insurance ⟞⟝265—Statements in application held warranties.**

Where fire insurance policy specially referred to application, and expressly provided that the policy was issued in consideration of statements in the application which were warranted to be true, and the application was attached to the policy the representations *held* thereby made warranties.

2. **Insurance ⟞⟝268—When false representations in application will avoid policy stated.**

In absence of statute to the contrary, false representations in an application for insurance, which the applicant warrants to be true, and which are relied on by the company, will avoid the policy without reference to the materiality of such representations.

3. **Insurance ⟞⟝275, 281, 283(2), 286—Warranties not within anti-technicality statute.**

Where, in application for fire insurance, applicant falsely stated the cash value of the property, that the gin was located on applicant's own farm, that it was unincumbered, that he did not owe anything on it or the land, and that he had never been refused insurance, the representations were material, and the warranties were not within Vernon's Sayles' Ann. Civ. St. 1914, art. 4874a, known as the anti-technicality statute.

4. **Insurance ⟞⟝250(2), 311½ — Statute providing undisclosed incumbrance shall not avoid policy inapplicable to mutual companies.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 4892, providing that if, property is incumbered by lien, or after issuance of policy, it becomes incumbered, it shall not render the policy void, is inapplicable where insurer is a mutual company.

5. **Insurance ⟞⟝376(1)—Insurer not estopped from claiming policy void where limitations of agent's authority expressed.**

Where the limitation of an agent's authority is expressed in the application or in the policy in such a way that insured is charged with knowledge thereof, insurer will not be estopped from avoiding the policy by wrongful acts of the agent.

6. **Insurance ⟞⟝379(5)—Rule of insurer's right to avoid policy where false representations written into application by agent stated.**

Where false statements and representations, which are warranted to be true, were written into an application by the agent, and applicant knew or had means of knowing that such statements were untrue, insurer is not precluded from avoiding policy conditioned on such false representations.

7. **Insurance ⟞⟝379(5)—Insured by failure to read policy adopted representations in application as his own.**

Even though answers in application for fire policy were changed after it was signed by insured, where a copy was attached to the policy when delivered, as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 4951, and the policy provided that it would not become operative unless statements and representations in the application were true, insured, by failing to read the policy and verify the representations, adopted them as his own, and ratified the contract as delivered.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by R. F. Richbourg against the Texas State Mutual Fire Insurance Company. A judgment for plaintiff was affirmed by the Court of Civil Appeals (243 S. W. 590), and defendant brings error. Reversed and rendered.

Tyler, Hubbard, Monteith & Dougherty, of Belton, for plaintiff in error.

Jones & Jones, of Mineola, for defendant in error.

GERMAN, P. J. Defendant in error sued plaintiff in error, a mutual fire insurance company, chartered under the laws of Texas, to recover upon a fire insurance policy in the sum of $3,000, covering a certain gin house and machinery, situated in Wood county, Tex. As found by the jury, the loss amounted to $2,750, for which judgment was rendered in favor of defendant in error by the trial court. This judgment was affirmed by the Court of Civil Appeals at Texarkana. 243 S. W. 590. The policy became effective October 3, 1919, and the loss occurred January 1, 1920.

Plaintiff in error sought to avoid the policy on the ground that the application for the insurance contained false representations, which were material, which had been warranted as true by the applicant, and but for which the policy would not have been issued. The representations alleged to have been false were these: That the cash value of the property was $4,040; that the gin plant cost $4,490; that 1,000 bales of cotton had been ginned during the preceding season; that the gin was located on defendant in error's own farm; that the property was unincumbered; that defendant in error did not owe anything on the gin property or the land upon which it was located; and that defendant in error had never been refused insurance upon the property.

The application for insurance contained the representations above set out. The name of R. F. Richbourg was signed thereto by his brother, J. F. Richbourg, who was authorized to act for him. The application was taken by W. O. Shopshire, local agent of plaintiff in error, whose authority was limited to soliciting the application, forwarding same, delivering the policy, and collecting the premium. The limitation on the agent's authority was expressed in the policy of insurance, but not

in the written application. Only the officers of the company were authorized to execute the contract of insurance. The principal office was at Belton, Bell county. It is undisputed that the policy was issued upon the basis of the written application; that the officers relied upon the representations made therein, which they did not know to be untrue, and that the policy would not have been issued if they had known that any of said representations were not true.

It is undisputed that some, if not all, of the representations referred to above were untrue at the time the application was made. The jury found that such untrue statements were not made by defendant in error, and it follows as a result of this finding that they must have been written into the application by the agent. There is nothing to indicate that the statements were changed after the application was signed by Richbourg, and in his pleading he avers that he signed the application without reading it or having it read to him. The application contained the following agreement:

"I, or we, hereby warrant, covenant and agree that the foregoing is a just, full and true statement of all the facts and circumstances in regard to the condition, age, situation, value and risk of the property described; and I, or we, further warrant, covenant and agree that there exist no facts or circumstances material to the risk other than those herein stated and disclosed. I, or we, further covenant and agree that this application with its agreements, statements and answers and clauses and conditions shall constitute a warranty on my or our part and the basis for and a part of any policy or policies that may be issued hereon."

After the application was forwarded by the agent to the home office the policy was issued and returned to the agent, who delivered same to Richbourg and received the premium. There was attached to the policy a copy of the application which had been signed by Richbourg, and which contained the statements referred to. The policy was left by Richbourg at the bank, and remained in his possession until the fire occurred. He was in no manner prevented from reading and fully examining the policy. Among other things the policy contained the following:

"Reference is made to the application, survey, plan or description of the assured on file in this office, which hereby forms part of this policy, and is and shall be a continuing and promissory warranty by the assured."

Also the following:

"That the application made for the issuance of this policy is hereby made a part hereof, and in consideration of the statements contained in said application, which are hereby warranted to be true, this policy is issued, and would not have been issued or delivered except for the statements and representations contained in said application, and, if the statements and representations contained in said application for this policy are not wholly true and correct, then then this policy will not become operative, and the company shall only be liable in case of loss or damage to the property covered by this policy for the amount of premium paid thereon with six per cent. interest from the date of the receipt of said premium by the company."

[1-4] The application being attached to and made a part of the policy, the representations contained therein, some or all of which were shown to be untrue, were thereby expressly made warranties on the part of Richbourg. U. S. Fidelity & Guaranty Co. v. Maxwell, 152 Ark. 64, 237 S. W. 710. In the absence of a statute to the contrary, false representations in an application for insurance, which the applicant warrants to be true, and which are relied upon by the company, will avoid the policy without reference to the materiality of such representations. Insurance Co. v. Pinson, 94 Tex. 553, 63 S. W. 531; Modern Woodmen of America v. Atcheson (Tex. Civ. App.) 219 S. W. 543; Insurance Co. v. Smith (Tex. Civ. App.) 157 S. W. 755. However, the representations in question are very material. The warranties here referred to are not within the purview of article 4874a, known as the anti-technicality statute. Philadelphia Underwriters' Agency v. Driggers, 111 Tex. 392, 238 S. W. 633. Neither does article 4892 apply, because this is a mutual company. The provisions contained in the rider to the policy came within article 4874a, and the Court of Civil Appeals has properly decided the case as to these.

[5] The contention of defendant in error is that, because the false statements and representations were written into the application by the agent of the plaintiff in error, he having made truthful answers to the questions propounded to him by the agent, the plaintiff in error is estopped from claiming the policy void by reason of the misrepresentations, upon the theory that the acts of the agent were the acts of the company. The court of Civil Appeals seems to have taken this view of the matter without discussing the proposition at all. We do not find it necessary to decide whether an insurance company will be estopped from avoiding a policy where false representations have been written into the application by the agent when the agent's authority is a limited one, as in this case, there being nothing in the application itself showing the limitation on the agent's authority. The rule seems to be well settled in this state to the effect that, when the limitation is expressed in the application or in the policy in such way that the insured is charged with knowledge thereof, the company will not be estopped by the wrongful acts of the agent. Fitzmaurice v. Life Ins. Co., 84 Tex. 61, 19 S. W. 301; Insurance Co. v. Harris, 26 Tex. Civ. App. 537, 64 S. W. 867.

[6] But, whatever may be the general rule as to estoppel by reason of the agent's acts, it has no application to this case. It is the

established law of this state, and of many states, that, where false statements and representations, which are warranted to be true, are written into an application for insurance by the agent, and the applicant knows or has the means of knowing that such statements are contained in the application, and are not true, the insurance company is not precluded from avoiding the policy where it has been conditioned upon such false representations. Insurance Co. v. Hazlewood, 75 Tex. 338, 12 S. W. 621, 7 L. R. A. 217, 16 Am. St. Rep. 893; Fitzmaurice y. Ins. Co., 84 Tex. 61, 19 S. W. 301; Ætna Ins. Co. v. Holcomb, 89 Tex. 404, 34 S. W. 915; Sovereign Camp W. O. W., v. Lillard (Tex. Civ. App.) 174 S. W. 619 (writ denied); Supreme Lodge, K. of H. v. Payne, 101 Tex. 449, 108 S. W. 1160, 15 L. R. A. (N. S.) 1277; Modern Woodmen v. Angle, 127 Mo. App. 94, 104 S. W. 297; Insurance Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837, 29 L. Ed. 934; Insurance Co. v. Hilton-Green, 241 U. S. 613, 36 Sup. Ct. 676, 60 L. Ed. 1202; Layton v. N. Y. Life Ins. Co., 55 Cal. App. 202, 202 Pac. 958; Goldstone v. Life & Trust Co., 33 Cal. App. 119, 164 Pac. 416; Life Ins. Co. v. Freedman, 159 Mich. 114, 123 N. W. 547, 32 L. R. A. (N. S.) 298; Stanulevich v. Life Ass'n, 228 N. Y. 586, 127 N. E. 315.

[7] Defendant in error admits that he did not read the application after his answers had been written down by the agent. He permitted the application to leave his possession, with his signature attached to it, containing warranties that the statements therein were true. He knew that the company must rely upon these statements as a basis for the contract, and must necessarily act upon the warranty that such statements were true. For this reason it was his duty to see that the answers to all questions were correctly written. His negligence in failing to read the answers before signing the application ought, in equity, to estop him from avoiding the consequences thereof. W. O. W. v. Lillard, supra. However, in view of the fact that the answers may have possibly been changed after the application was signed, we do not decide whether he was estopped on this ground or not.

At the time the policy was delivered to defendant in error it had attached a copy of the application signed by defendant in error, containing the representations above set out. This was in accordance with article 4951 of our statutes. The purpose, no doubt, of this article was to give the insured an opportunity to see that the policy contained a true and full statement of the facts upon which it was based, so that, before liability was incurred for the premium, he might know that the policy was valid and contained only such statements, promises and warranties as he had actually made. The policy contained this provision:

"If the statements and representations contained in said application for this policy are not wholly true and correct, then this policy will not become operative and the company shall only be liable in case of loss or damage to the property covered by this policy for the amount of premium paid thereon with 6 per cent. interest from the date of the receipt of said premium by the company."

This made it the imperative duty of the defendant in error to read the policy and verify the statements and representations it contained. However, as said by the Supreme Court in the case of Insurance Co. v. Holcomb, supra:

"He is bound by its terms, whether he read it or not, there being no facts shown which prevented him from doing so. * * * The fact that" he "did not know the contents of the policy will not relieve him from the binding force of the warranty contained in it. He could have read it if he had desired to do so."

It follows, therefore, that, whether he reads the policy or not, with it in his possession, containing the application with the questions and answers, he adopted them as his own and ratified the contract in the form and with the terms as it existed at the time it was delivered to him.

In the case of Life Insurance Co. v. Hazlewood, supra, it was held that the insured was bound to give truthful answers to the questions propounded by the medical examiner, but, under the circumstances of that case, was not bound to see that the answers were correctly recorded. However, in that case the court made this significant statement:

"If, however, it did by any means come to the knowledge of the insured that answers given by him had been incorrectly written down, it then became his duty to see that the proper corrections were made, and if he failed to do so, then, although not bound by a warranty, plaintiff ought now to be held estopped from disputing them as written; and if under such circumstances incorrectly written answers materially affected the risk, and the issue was properly raised by the pleadings and sustained by the evidence, a recovery ought not to be had."

The question under consideration here was squarely decided in the case of Sovereign Camp, W. O. W., v. Lillard, supra, in an able opinion by Judge Rice. In that opinion numerous cases are reviewed, including the cases of Ryan v. Mutual Life Ins. Co., 41 Conn. 168, 19 Am. Rep. 490, and N. Y. Life Ins. v. Fletcher, supra, both of which are leading cases, the latter having been many times approved by the courts of this state.

In the recent case of Mutual L. Ins. Co. v. Hilton-Green, the Supreme Court of the United States cites the Fletcher Case and other cases, and restates the rule in this language:

"The assured at the least consciously permitted an application containing material misrepresentations to be presented by subordinate

agents to officers of the insurance company under circumstances which he knew negatived any probability that the actual facts would be revealed; and later he accepted policies which he must have understood were issued in reliance upon statements both false and material. He could claim nothing because of such information in the keeping of unfaithful subordinates. Moreover, the false representations accompanied and were essential parts of the policies finally accepted. He did not repudiate, and therefore adopted and approved, the representations upon which they were based. Beyond doubt an applicant for insurance should exercise toward the company the same good faith which may be rightly demanded of it."

The courts of many other states have followed this rule, and the cases of Modern Woodmén of America v. Angle, supra, by the Court of Appeals of Missouri, and Life Insurance Co. v. Freedman, supra, by the Supreme Court of Michigan, discuss the question in a very clear and forceful manner. In the latter case the holding is stated in the syllabus in this way:

"That an ignorant applicant for life insurance did not actually know of false statements in the application as to his age and rejection by other companies will not prevent a cancellation of the policy for fraud, if the application is made a part of the contract and the statements therein are warranted, while the policy goes into his possession and is retained by him, since it is his duty to know that the representations in the application are true."

The jury found that plaintiff in error had waived its right to avoid the policy for failure of the defendant in error to keep the promises and agreements contained in the rider to the policy. This is immaterial in view of the conclusion we have reached with reference to the false representations in the application on which the contract was based. The question of the waiver of plaintiff in error's right to avoid the policy on this ground was not submitted to the jury, and in our opinion was not raised by the evidence; especially in view of the conditions of the policy, and the written agreement of defendant in error to the effect that plaintiff in error would waive no right or privilege by conducting the investigation it did through its adjuster. Defendant in error was entitled to a refund of the premium paid, with 6 per cent. interest, but this had been sent to him before the suit, and he was in possession of the check at the time of the trial.

We recommend that the judgment of the Court of Civil Appeals and of the district court be reversed, and judgment be rendered in favor of plaintiff in error.

CURETON, C. J. Judgments of the Court of Civil Appeals and District Court are both reversed, and cause rendered for plaintiff in error.