## AMERICAN NAT. INS. CO. v. MASSENGALE.

### No. 4947.

Court of Civil Appeals of Texas. Amarillo.

Oct. 31, 1938.

Rehearing Denied Dec. 5, 1938.

Sam J. Hamilton and John Deaver, both of Memphis, and Frank S. Anderson, of Galveston, for appellant.

C. Land, of Memphis, for appellee.

FOLLEY, Justice.

This is a suit upon an insurance policy issued June 3, 1935, by the appellant, the American National Insurance Company, upon the life of Ben F. Massengale in the sum of $500, in which policy, Lettie T. Massengale, appellee, was beneficiary. The insured died on December 23, 1935. The policy in question contained a provision to the effect that it should be void if the insured was not in sound health on the date of the issuance of such policy. It is uncontroverted that the insured in this case was in unsound health on the date the policy was issued, and that he died some six months later by reason of the same illness. The chief controversy between the parties herein is based upon the question of waiver and estoppel on the part of the appellant in regard to the sound health clause of the policy.

This is the second appeal of this case. The opinion of this court upon the first appeal may be found in 105 S.W.2d 373. In such opinion there is a sufficient statement of the pleadings and basic facts which are substantially the same as in the present appeal. We shall add to such statement only such matters as are pertinent to the present appeal.

In response to special issues, the jury found that the insured, on the date of the policy in question, had high blood pressure and heart disease, or one of such diseases, which rendered his health unsound; ·that the defendant, on the date of such policy, by or through its duly authorized agent or agents, while acting· within the scope of their authority, had knowledge that the insured had high blood pressure and heart disease, or one of such diseases, which rendered his health unsound; that after the delivery of the policy the defendant by or through its duly authorized agent or agents, while acting within the scope of their au-

thority, received and accepted payments or premiums on such policy with full knowledge that the insured had high blood pressure and heart disease or one of such diseases, which rendered his health unsound on the date of the policy in question; that the insured did not tell the soliciting agent that he was suffering from heart disease; that the insured did tell such agent that he was suffering from high blood pressure; and that a reasonable attorneys' fee was $150. Upon such findings, the court rendered judgment for the appellee for the face amount of the policy, 12% penalty and $150 as attorneys' fees.

The appellant filed a motion for a judgment non obstante veredicto, which was overruled by the court. The appellant assigns such action by the court as error. In support of such assignment the appellant asserts that the policy provided that it. should be void if the insured was not alive and in sound health on the date of the issuance of the policy; that the evidence and verdict of the jury showed that the insured was not in sound health; and that the appellees failed to prove that the appellant waived the provisions of the policy.

The insurance application contains a purported answer from the insured that he had suffered no illness or disease during the preceding three years. It further contained a stipulation that the applicant agreed that no obligation should exist against the insurance company unless the insured was alive and in good health on the day the policy was delivered and on the date of the policy, "any statement of any agent to the contrary notwithstanding." The policy itself provided that it should be void if the insured was not alive and in sound health on the date of the issuance of such policy. It further provided that the company would assume no liability under the policy upon a reinstatement of the policy unless the insured was alive and in sound health and safely insurable at the original date of the issuance of such policy. Another provision of the policy was as follows:

"Alteration or Modification of Contract— The terms of this Policy cannot be changed or its conditions varied, except by endorsement hereon signed by the President or Secretary. Agents (which term includes Superintendents and Assistant Superintendents) are not authorized and have no power to make, modify or discharge contracts, or to extend the time for paying any premium, to waive any lapse or forfeiture, or any of the Company's rights or requirements, or to bind the Company by any promise, written or oral, not contained in this Policy."

The evidence conclusively showed, and the jury found, that the insured was not in sound health on the date of the policy. Dr. O. R. Goodall of Memphis, Texas, testified that he began treating the insured either in 1933 or 1934; that at such time the deceased was suffering from a bad leakage of the heart and high blood pressure; he examined the insured at other times until his death and at each examination the insured had the same trouble; he was never in sound health during such period, but his condition was serious continuously; that a person in the condition of the insured might die any minute or he might live a year or so; and that he had told the insured of the serious condition of his heart. There is other testimony in the record in support of the testimony of Dr. Goodall.

Mrs. Massengale, the appellee, was the only witness to testify as to the facts with reference to the taking of the application upon which the policy was issued. Her version of such occurrence was in substance as follows: That W. R. Ward, who was admittedly only a soliciting agent of the defendant, came to her home and took the application; that she told the agent that the doctor had said her husband had high blood pressure; that she told Ward her husband probably could not take out insurance because of such high blood pressure; that Ward wrote out the application, asking the questions of her husband, and she heard her husband's answers; that in answer to the question as to what illness or disease her husband had suffered during the past three years, her husband replied that the doctor said he had high blood pressure; that the agent said there was nothing against high blood pressure; that her husband did not say anything about any other trouble; and that she saw her husband sign the application. The appellee further testified that Ward delivered the policy, and at the time of the delivery asked her husband how he felt, to which question the insured replied, that he felt fine.

In our opinion, the case of Willis et al. v. Texas Prudential Ins. Co., Tex.Civ.App., 101 S.W.2d 857, in which a writ of error was refused by the Supreme Court of Texas, is decisive of the case before us. In the Willis Case the policy involved contained a provision substantially the same as the portion above quoted from our policy

with reference to the authority to make or modify the terms of the insurance contract. Such policy also contained substantially the same sound health provision as did the policy in the instant case. Upon the delivery of the policy of insurance in the Willis Case, the agents, Powell and Hale, were informed that the insured was in the hospital and in unsound health. In that case, as in the instant case, a waiver of the sound health provision of the policy was urged in the appellate court. In discussing the question involved, Judge Speer, speaking for the Court of Civil Appeals at Fort Worth, said [page 859]:

"The foregoing stipulation is not an unreasonable one, especially in view of the fact defendant had agreed to issue a policy of insurance without a medical examination of the applicant. There is no good reason why the insurer should not be entitled to know that a person is in good health when the policy becomes effective. There is a greater hazard to the company when its takes that chance than if it required a medical examination of the insured. For this reason, no doubt, the defendant provided in the contract against being bound by statements by or to any other person than its president, vice president or secretary. Many difficult and perplexing questions have arisen in the past, and may do so in the future, as to when an agent is acting within the scope or apparent scope of the authority given him by his principal, and consequently the question arises when is the principal bound by the acts of an agent? The contract here removes all chance of doubt when it provides that only the president, vice president or secretary can bind the company under promises to change or alter the written contract, and that they can only do so by a written instrument executed at the home office.

"There is no contention by plaintiffs that the defendant, through any of its executive officers, had actual or constructive notice of the physical condition of Mrs. Thelma Lorena Hull when it issued and delivered the policy: But it is insisted by plaintiffs that it was the duty of Powell and Hale to inform the defendant that the insured was not in good health when the policy was written. The plain wording of the policy accepted by the insured refutes such contention. The contract specified the only persons by whose words and acts the defendant was willing to be bound. The contention of plaintiffs would read into the contract the very thing the provisions of the contract inhibited; plaintiffs' contention means that information possessed by some person other than those named in the contract would be binding on defendant, and that some person other than those named would have authority to waive or change the conditions and terms thereof.

"We do not hold the defendant could not waive or estop itself to rely on the 'good health' provisions. Our courts have often held it can be done, but in no case so far as we have been able to find has it been held to be waived or the company estopped to rely upon it without actual or constructive knowledge of the facts as they actually existed. * * *

. "In view of the provisions in the contract it is clear to us Powell and Hale were not such agents of defendant as could by their words or acts waive the stipulations for 'good health' when the policy was delivered, and that the defendant could so contract that it would not be bound by their conduct.

"Revised Civil Statutes, art. 5063, provides: 'Any person who shall solicit an application for insurance upon the life of another shall in any controversy between the assured and his beneficiary and the company issuing any policy upon such application be regarded as the agent of the company, and not the agent of the insured, but such agent shall not have the power to waive, change or alter any of the terms or conditions of the application or policy.'

"Plaintiffs' theory is that when the agents delivered the policy with knowledge that the insured was not in good health, the provision relating thereto was waived by the defendant. The contract of insurance sued on by plaintiffs stipulated to the contrary; and if it had not provided against binding the defendant by what some agent said or knew, the statute above quoted would render void any act of the agents tending to waive, change, or alter any of the terms of the application or policy. That statute became a part of the contract, the same as if its provisions had been fully written into it and agreed to by the parties."

In further support of this proposition, in the case of Texas State Mut. Fire Ins. Co. v. Richbourg, Tex.Com.App., 257 S.W. 1089, 1090, Judge German, speaking for the Commission, said:

"The contention of defendant in error is that, because the false statements and rep-

resentations were written into the application by the agent of the plaintiff in error, he having made truthful answers to the questions propounded to him by the agent, the plaintiff in error is estopped from claiming the policy void by reason of the misrepresentations, upon the theory that the acts of the agent were the acts of the company. The Court of Civil Appeals seems to have taken this view of the matter without discussing the proposition at all. We do not find it necessary to decide whether an insurance company will be estopped from avoiding a policy where false representations have been written into the application by the agent when the agent's authority is a limited one, as in this case, there being nothing in the application itself showing the limitation on the agent's authority. The rule seems to be well settled in this state to the effect that, when the limitation is expressed in the application or in the policy in such way that the insured is charged with knowledge thereof, the company will not be estopped by the wrongful acts of the agent."

Upon this same proposition, see, also, Fitzmaurice v. Mutual Life Ins. Co. of New York, 84 Tex. 61, 19 S.W. 301; Great Nat. Life Ins. Co. v. Gafford, Tex.Civ.App., 108 S.W.2d 917, and the authorities cited in each of the Willis and Richbourg Cases, supra.

In the instant case there is no testimony that the appellant, through any of its executive officers, had actual or constructive knowledge of the unsound physical condition of the insured, unless it could be said that knowledge by the agent was such knowledge as would be chargeable to the company. In this respect the appellee relies solely upon the knowledge of the agent as a basis for her contention that the company had waived the sound health provision of the policy. The application for the insurance contains no intimation of the insured's unsound health. The testimony further reveals that in a "nonmedical policy", as in the instant case, the appellant relied solely upon the information furnished in the application. Under the above authorities, it is our opinion that the agent was not such person as was authorized to waive the sound health provision contained in both the application and the policy.

There is another feature of the case before us that produces a stronger reason for upholding the sound health provision of the policy than existed in the Willis Case. The testimony is uncontroverted that the insured was suffering from a serious heart disease. The appellee testified, and the jury found, that the insured did not reveal such condition to the soliciting agent who took the application. There is no testimony that any agent or representative of the insurer received any information that the insured was afflicted with heart trouble. Dr. Goodall testified there was a vast difference between high blood pressure and a serious heart disease; that a person might have high blood pressure, without a bad heart condition and enjoy good health for years before he became incapacitated; but that a bad leakage of the heart, combined with high blood pressure, produced a very serious condition. The testimony of Dr. Goodall conclusively shows that the chief ailment of the insured which contributed to his unsound condition was not his high blood pressure, but was his heart trouble. Therefore, if it could be said that the appellant was charged with notice of the insured's high blood pressure, and waived the good health provision of the policy in so far as the high blood pressure would render the insured's health unsound, it cannot be said that such company would be charged with knowledge that the insured had a serious heart disease which was likely to cause him to die any minute; nor can it be said that the appellant waived the good health provision of the policy with reference to the serious heart trouble about which it had no notice. Upon this important feature of the waiver and estoppel urged by the appellee in avoidance of the sound health provision of the policy, the appellee has wholly failed to make out a case both by the proof and verdict of the jury. It is our opinion that the court should have rendered judgment for the appellant non obstante veredicto.

This case having been fully developed upon the trial in the county court, the judgment of the trial court is reversed and judgment rendered for the appellant.