## TEXAS MUT. LIFE INS. ASS'N v. HENDERSON et al.

### No. 9487.

Court of Civil Appeals of Texas. Galveston. Dec. 11, 1930.

Trippet, Richey & Sheehy, of Waco, for appellant.

W. M. Hilliard, of Caldwell, for appellees.

LANE, J.

The Texas Mutual Life Insurance Association, a Texas corporation, was, on and for some time prior to the 20th day of November, 1928, a mutual life insurance association doing business in the state of Texas; on the date above named said mutual life insurance association executed 'and delivered to one Thomas Henderson its policy of life insurance whereby it insured the life of said Thomas Henderson in the sum not to exceed $2,500. Ben Henderson and Elva Henderson Carroll, son and daughter of Thomas Henderson, were named in the policy as beneficiaries.

The pertinent parts of the policy are as follows:

"This certificate witnesseth, That Mr. Thomas Henderson is this day admitted as a member of the Texas Mutual Life Insurance Association subject to the following conditions:

"That his or her membership is based on his or her application, which application is filed in the office of the Texas Mutual Life Insurance Association, subject to the by-laws of said Association.

"That said member agrees to the stipulations herein that this certificate shall bind the Texas Mutual Life Insurance Association to pay to the order of Ben and Elva Henderson who bears relation to the insured as son and daughter, or heirs, the sum of $5.00, to be collected from each member of said Association in good standing, in this class, at the time of his or her death, plus all death assessments which have been paid by the insured during the life of this policy, said amounts payable under this policy in no event to exceed $2,500.00, plus death assessments paid, and provided further that the insured herein shall be in good standing in this class of the Texas Mutual Life Insurance Association at his or her death.

"This insurance is granted in consideration of the application herefor, which is hereby made a part of this contract, and of the payment of each assessment which shall be levied by the directors of the Texas Mutual Life Insurance Association, upon the death of a member hereof, as follows: $5.50 upon the death of any member in this class within ten days from the date of notice of such death, and one assessment per year as annual dues of $5.50 to be paid on or before the 1st day of October each year.

"It is further agreed that failure to pay any assessment so levied within ten days from date of notice or to pay said annual dues shall forfeit all claims as a member of the Texas Mutual Life Insurance Association.

"It is also agreed that if any untrue statement or statements have been made with fraudulent intent in the application as to age,

health, family history, or any other question that would materially increase the risk, this certificate becomes null and void, and the liability of the Association shall be limited to the amount of premiums paid hereon in the form of assessments. * * *

"The insured agrees to pay one special assessment of $5.50 each year which shall be used for the Special Benefit Fund. All disability claims shall be paid from the special benefit fund. The obligation of the Association to make payment of any of the amounts of this policy is conditioned upon said amount being collected from policy holders in this class by making one assessment upon each member in good standing in this class on account of the death or accident of the insured. The Association shall in no event be liable for more than the amount realized from such an assessment nor shall the policy holders be obligated to pay more than one assessment for any one death or accident. The failure to pay any assessment levied by the Association within ten days from date of notice shall without further action of the Association lapse this policy and the policy holder shall thereafter have no claim hereunder until and unless he shall have been reinstated by the Association."

The policy also provides that the making of fraudulent or *untruthful statements in the application for membership shall render such policy null and void*, and that in such event the association shall be liable only for the return of all assessments paid by the insured. (Italics ours.)

There are other provisions which read as follows:

"Only the President and Secretary has the power in behalf of the Association (and then only in writing) to make or modify this or any other contract, or to extend the time for payment of any assessment, and the company shall not be bound by any promise or representation heretofore or hereafter given or made by any agent or person other than the above named. * * *

"This policy is subject to all the by-laws of the Association now in force or that may be hereafter enacted.

"This certificate is not binding upon the Texas Mutual Life Insurance Association, unless countersigned in ink by the person in whose name it is written."

The policy was accepted by the insured in writing in the following words:

"I, the undersigned, have carefully read this policy and I accept it subject to the conditions above set out.

"T. B. Henderson, Insured."

It is provided by section 4 of the by-laws of the association that, in order to become a member of the association, the applicant therefor shall fill out an application upon the form approved by the board of directors, and state therein the general health, the correct age, and moral standing of the applicant, and truthfully answer and correctly record the specific answers to the questions asked on the application form with reference to his or her having had, or been told they suffered, diseases or ailments named therein, and that the responsibility for correctly so recording such answers to the questions contained in the application is wholly upon the applicant, and such responsibility cannot be placed elsewhere.

The application for membership of Thomas Henderson upon which the policy mentioned was issued was dated October 25, 1928. In answer to the questions propounded in such application it is substantially stated:

First, that the name of the applicant is Thomas Henderson of Caldwell, Tex.; 62 years of age; occupation, "Real Estate."

Second, that applicant had not consulted during the next preceding two years any physician or surgeon.

Third, that applicant was in good health.

Fourth, that applicant had never had any disease affecting his kidneys, liver, blood, skin, genital organs, heart, bladder, bowels, stomach, lungs, teeth, tuberculosis, diabetes, rheumatism, cancer, tumor, dropsy, paralysis, bronchitis, asthma.

Fifth, that he had suffered from a rupture for 25 years and was wearing a belt, but that he was never troubled with same.

Sixth, that his physician was Dr. A. Gruger.

The concluding paragraphs of the application are as follows:

"It is understood and mutually agreed: That this application, if accepted, and the policy, if any issued, are to be construed as one and the same contract, and the policy will be issued with the understanding that all the conditions and provisions set out in said instruments are part and parcel of the same contract.

"I hereby state that I knew the contents of the foregoing before signing and delivering the same.

"Signed this 25th day of October, 1928.
"Solicitor: Ed Green.
            "Applicant: Thomas Henderson.
            "Signed by: Self."

Thomas Henderson died on the 30th day of March, 1929. After his death, proof of death as required by the terms of the policy was procured by the beneficiaries named therein from Dr. W. W. Latham in due time and sent to the insurance association. Such proof shows substantially: That at the time of his death Thomas Henderson was 62 years of age; that the doctor saw the deceased first on August 31, 1928, and treated him for stom-

ach trouble and visited him professionally the first time during his last illness on February 10, 1929, and last time on March 29, 1929; that Thomas Henderson died March 30, 1929; that deceased was totally disabled for two months next before his death; that affiant examined the deceased on the thirty-first day of August, 1928, and found that he was suffering from stomach trouble, which grew worse to the time of his death; that the immediate cause of the death of Thomas Henderson was stomach trouble, which grew worse, until. he was not able to get nourishment for two weeks before death; that the deceased was not able to work for six months prior to his death, and he was confined to his house for about two months.

Such proof of death was signed by and sworn to by Dr. W. W. Latham on the 3d day of April, 1929, and was forwarded to the insurance association by the beneficiaries named in the policy.

All assessments made upon Thomas Henderson to keep the policy in force were paid. Demand for payment of the sum supposed to be due on the policy was made, and such demand was refused.

Upon the refusal of the demand of the beneficiaries, as above stated, Ben Henderson and Elva Henderson, beneficiaries named in the policy, instituted this suit against Texas Mutual Life Insurance Association, hereinafter referred to as the association, to recover the sum of $2,500, the sum named in the policy, together with $16.50, amount of assessments paid by the insured.

The pleadings of the parties cover 25 pages of the record, but we consider the following statement to be sufficient to present the issues raised on this appeal:

The allegations of the plaintiffs' original petition are sufficient to entitle them to the recovery sought if supported by the evidence, and not defeated by proof of the defense interposed by the defendant.

Defendant answered by general denial, and specially alleged that it was a mutual life insurance association, insuring the lives of its members and operating on the assessment plan; that membership in the association is based upon the written application executed by the applicant who desires to become a member; that Thomas Henderson did, on the 25th day of October, 1928, execute a written application for membership in the association, based, on the answers, statements, and representations contained in such application which he warranted to be true; that such application contained, among other statements, the following: That he had consulted no physician or surgeon during the past two years; that he (Thomas Henderson) was in good health; that he did not have any diseases affecting his kidneys, liver, blood, skin, genital organs, heart, bladder, bowels,

stomach, lungs, or teeth; that he had never had tuberculosis, diabetes, rheumatism, cancer, dropsy, bronchitis, asthma, or any other ailment, mental or physical defect not mentioned in such application; that, in answer to the inquiry as to whether he had suffered a rupture, he stated that he had and had worn a belt for 25 years without trouble. The association also alleged:

That such application contained the following:

"It is understood and mutually agreed: That this application, if accepted, and the policy, if issued, are to be construed as one and the same contract, and the policy will be issued with the understanding that all the conditions and provisions set out in said instruments are part and parcel of the same contract.

"I hereby state that I know the contents of the foregoing before signing and delivering same."

That by the statements, answers, and representations so made in said application, Thomas Henderson warranted that he had consulted no physician for two years next before making such application, and that he had not suffered any of the ailments mentioned therein; "that said application was received by the defendant, and relying upon same and believing same to be true and believing the statements and representations and warranties contained therein were true and correct the defendant issued its policy No. 3515 on the life of Thomas Henderson in Class B, on or about the 20th day of November, 1928." At this point the pertinent parts of the policy as set out in our preliminary statement are specially pleaded.

The association then alleged:

That the policy was sent to and accepted by Thomas Henderson subject to the conditions of same; that said policy was issued and accepted subject to all the provisions of the by-laws of the association, setting out the pertinent parts of such by-laws as we have set them out in our preliminary statement.

"That the said Thomas Henderson by the terms in his policy and under the law was charged with full notice of all the provisions of said by-laws in force at the time he executed his said application and at the time he received his said certificate of insurance; that said by-laws were valid and binding upon the said Thomas Henderson and upon the beneficiaries under said certificate.

"That under the by-laws and policy of said defendant that Thomas Henderson was charged with the duties and responsibility of seeing that the questions in his said application were truthfully and correctly answered and truthfully and correctly recorded; that the answers contained in said application of the said Thomas Henderson were not true and correct; that Thomas Henderson did not give

the names or addresses of any physician or surgeon whom he had consulted during the past two years, but answered said questions, No, thereby leading this defendant to believe that he had had, no medical treatment during the past two years preceding the date of said application, which answer was in fact untrue in that the said insured, Thomas Henderson, had consulted physicians or surgeons during the two years next preceding the date of said application; that the answers in said application in response to question No..4, that Thomas Henderson was then in good health was false and untrue and was known by the said Thomas Henderson to be untrue for the reason that at the date of said application and for some time prior thereto he had been in bad health and a sick man; that the answers to questions Nos. five and six that he had never had any disease affecting the heart or stomach; that he had never had cancer, were in fact untrue and known to the said Thomas Henderson to be untrue for the reason that he knew he did have some disease affecting his stomach and had been suffering at the time and for quite a while prior thereto with his stomach and heart; that he had chronic myocarditis and arteriosclerosis, which are diseases affecting the heart; that he had carcimona of the stomach or cancer at the time of the execution of said application when he warranted that he was in good health and had no disease of the stomach; that his stomach trouble or cancer was at such stage of development that he died from same in a short time after the policy or certificate was issued and delivered to him; that his statement in his application that his physician was Dr. A. Gruger was false and untrue; that said statements of Thomas Henderson contained in his application were material to the risk, were false and untrue as above stated, and were knowingly and intentionally made by Thomas Henderson and were relied upon by this defendant in issuing its policy, as aforesaid; that this defendant believed and so believing was induced to issue its policy upon his life believing that he was in good health; that he had no stomach or heart trouble; that he had not consulted any physician for two years preceding the application; that he did not have cancer, and that had this defendant known the truth about the said Thomas Henderson's health and about his medical attendance it would not under any circumstances have issued or delivered to him the policy sued upon; that by reason of the false and material misrepresentations this defendant says under its policy and by-laws it is not liable to the said beneficiary under same, other than to return the amount of assessments paid by the said Thomas Henderson under said policy and it has, at all times, been ready, willing and able to pay said plaintiffs said assessments and here and now tenders

the same to plaintiffs in full satisfaction of all liability under said certificate.

"That if it should be found or held that the said Thomas Henderson for any reason did not execute the application for membership in said Association, then it alleges that same was executed with his knowledge and consent; that he knew same had been executed; that he ratified and adopted same with knowledge that it had been executed, and accepted the policy issued based on said application, and that the defendant association was relying on same, and knew by the terms of said policy and the provisions and the by-laws that the said policy was based on said application and therefore he and the beneficiaries under said policy are now estopped to deny the execution of said application.

"That if, for any reason, it should be held that said application was not executed by the said T. B. Henderson, or under his authority, then this defendant alleges that the said T. B. Henderson under the by-laws of said defendant association never in fact became a member of said association; that there was no meeting of the minds between the parties and no contract was actually formed between said association and said Thomas Henderson; that the said Thomas Henderson was charged with notice that in order to become a member under the by-laws and policy he had to execute a written application and if in fact he did not execute same, then he never became a member of said association and this defendant is in no way bound by said policy."

By supplemental petition plaintiffs denied generally; denied that the application for membership described in defendant's answer was signed or executed by Thomas Henderson, or by any person authorized by him to sign the same for him; denied that Thomas Henderson had ratified or confirmed the execution of such application; and averred that he did not know the defendant had any such application in its possession, that such application is a forgery and was not executed by Thomas Henderson.

By supplemental answer defendant alleged that Thomas Henderson knew from the provisions of the policy that it was based upon a written application therefor; that he was charged by the by-laws of the association with notice and knowledge that an application was necessary for him to become a member of the association; that Thomas Henderson knew that the association had an application purporting to be made by him and that it was relying upon the same; and that, if in fact he did not execute the same he should have notified defendant of such fact after being informed by defendant that it held his application; and therefore he is estopped to deny the execution of said application.

Defendant further alleged "that if said application is a forgery that they had no knowledge of said fact, but relied upon said application, and believed same to be genuine in issuing said certificate; that there was no meeting of the minds of the parties, but was a mutual mistake if said application was forged, and defendant is entitled to rescission of said certificate of insurance."

Defendant denied that Green, the soliciting agent, had authority from it to forge an application for Thomas Henderson; that Thomas Henderson, with notice, both actual and constructive, that an application had been executed in his behalf, was charged under the by-laws of the association, made a part of the policy, that the duty was upon him to see that the questions in his application were truthfully answered and recorded, and that the responsibility for so doing was upon him and could not be placed elsewhere.

By their second supplemental petition, plaintiffs denied generally the allegations of defendant's supplemental answer.

A jury was selected and sworn to try the case, but, after the close of the evidence, the court peremptorily instructed a verdict for the plaintiffs for the sum sued for. Such verdict was accordingly rendered, and judgment was rendered against defendant in favor of the plaintiffs for the sum of $2,516.50. Defendant has appealed.

■ Appellant, as reasons for a reversal of the judgment of the trial court and the rendition here for it as to all the sum awarded against it, except $16.50, which it tendered into court, presents: That the court erred in not instructing a verdict in its favor upon its motion therefor, and in instructing a verdict for the plaintiff, first, because the undisputed evidence shows that, after Thomas Henderson received the policy, he read the same and knew its contents, and, with the knowledge that the by-laws of defendant association and the application upon which the policy was issued were made parts of it, which said application contained false and fraudulent representations, alleged by defendant, which were material to the risk and which induced defendant to issue and deliver the policy to Thomas Henderson, without which defendant would not have issued the same, and because the undisputed evidence shows that Thomas Henderson had notice that an application for membership in the association, as required by the by-laws of the same, purporting to be his, and upon which the policy was issued by the association, had been received by the association, he sent the fee necessary to entitle him to membership in the association to it and accepted the policy issued upon said application after being put on notice that an application for membership in the association, purporting to be his, had been received; therefore he and the beneficiaries named in the policy were estopped to deny that such application was in fact the application of Thomas Henderson.

We think the facts as above stated by appellant are supported by the undisputed evidence and that they constituted the estoppel pleaded by appellant, and, so believing, we sustain appellant's contention that the trial court should have instructed a verdict in behalf of appellant as requested by it, except as to the sum of $16.50 paid by Thomas Henderson as assessments, which sum was tendered into court by appellant.

■ In Hemphill County Protective Association v. Richardson (Tex. Civ. App.) 264 S. W. 294, 297, it is said:

"In any event, it is the general law that the constitution and by-laws of mutual benefit societies are a part of the contract between the association and the member, and that every member who receives a certificate of membership is conclusively presumed to be bound by the provisions of the constitution and by-laws which affect the validity of his contract. The courts of Texas have uniformly so held in cases where either fraternal benefit societies or local mutual aid associations are parties litigant. * * *.

"It is the duty of an applicant for membership in an association of this kind to read over the answers written in his application before signing it, and in the event of a failure to do so both the applicant and the beneficiary, in the absence of fraud or other equitable grounds, are bound by the answers so made. Sov. Camp., W. O. W., v. Lillard (Tex. Civ. App.) 174 S. W. 619; Sov. Camp, W. O. W., v. Rodriguez (Tex. Civ. App.) 249 S. W. 266."

■ Second, appellant further insists that the terms of the policy are nonenforceable against it even if it be now admitted that the application received by appellant, upon which it in good faith issued the policy, was not in fact the application of Thomas Henderson, then the undisputed evidence shows that Thomas Henderson never made any application for membership in the association, and that, as such application was a necessary prerequisite to become such member, Thomas Henderson never in fact, became a member, and therefore there was no meeting of the minds of the parties and no contract of insurance resulted. •Therefore appellant was entitled to an instructed verdict in its behalf, except as to the $16.50, above mentioned.

We sustain appellant's second contention. If the application upon which the policy was issued was in fact not the application of Thomas Henderson, and if he did not ratify it by accepting the policy after receiving notice that the application had been received by the association, purporting to be his application, he never became a member of the association, and the minds of the parties never

met on the issuance of the policy, and therefore the alleged policy contract was void and *not binding on appellant.*

In Cooley's brief on Insurance, vol. 1, p. 565, it is said: "Generally speaking, an application must be made by the person whose property or life is to be insured, or by his duly authorized agent. As said in Carrigan v. Mass. Benefit Ass'n (C. C.) 26 F. 230, a policy is fraudulent and void when procured by a paper purporting to be an application by the insured, but executed by another in his name; the by-laws requiring an application by the applicant in person."

Again in the same volume at page 568: "It is elementary that contracts of insurance, like other contracts, are based on mutuality. This fundamental principle is not less true because in some aspects contracts of insurance are regarded as unilateral. Not only is the mutual assent of parties necessary, but there must also be mutuality of obligation."

The undisputed evidence in the case disclosed that the statements contained in the application for the insurance were untrue and of such a degree of materiality as to avoid the policy. The undisputed evidence further discloses, we think, a clear ratification of the application executed by the insured, and acceptance of the benefits derived from said application, and therefore the insured and his beneficiaries are estopped to deny its execution, but are bound strictly according to its terms.

We also think that, if there was no ratification of the application, then, an application having been necessary to entitle the insured to membership in defendant's association, the minds of the parties never met and no contract of insurance ever resulted.

There was but one application purporting to be an application of Thomas Henderson received by the association; same being the one upon which the policy was issued to him and which was produced at the trial of this cause. Mr. R. Q. Travers, secretary of the association, testified that the application above mentioned was the only application purporting to be that of Thomas Henderson received by the association, and that he took the statements therein as true.

There was not a scintilla of evidence tending to show that the association received an application from Thomas Henderson showing that he consulted Dr. W. W. Latham as early as August, 1928, and was treated by him for stomach trouble which continuously grew worse until he died, as suggested by counsel for appellees. Such suggestion has no support in the evidence, and is contrary to all reason. It could hardly be thought that the association would have issued the policy if it had had before it an application showing the state of health of Thomas Henderson as shown by the proof of death furnished by appellees to appellant association after the death of Thomas Henderson.

For the reasons pointed out, so much of the judgment as awards to appellees a recovery of the $2,500 item called for in the policy, which does not include the sum of $16.50 awarded to appellees for assessments shown to have been paid by Thomas Henderson, is reversed, and judgment as to that award is here rendered for appellant. The remainder of the judgment, that is, for the award of the said sum of $16.50, is affirmed.

Reversed and rendered in part, and in part affirmed.