KANE *v.* DETROIT LIFE INSURANCE CO.

1. TRIAL—DIRECTED VERDICT—QUESTIONS FOR JURY—WAIVER.
   The presentation to the court of requests to charge nega-
   tived any intent on the part of counsel to waive the right
   of his client to have the jury pass on the questions of
   fact involved, although he had expressed the opinion that
   the court should direct a verdict.

2. INSURANCE—SOLICITOR AGENT OF INSURER—STATUTES.
   Under section 9305, 2 Comp. Laws 1915, the person soliciting
   an application for insurance must be regarded as the
   agent of the company and not of the assured, in any
   controversy arising between them.

3. SAME—FALSE STATEMENTS—FRAUDULENT INTENT—SILENCE.
   Retention of insurance policies by assured for seven months
   with application attached containing false statement that
   he had never been rejected by any other company, *held*,
   to be persuasive proof of fraudulent intent, assured having
   remained silent.

4. SAME—NOTICE—ESTOPPEL.
   If the insurance company, through its officers, had actual
   knowledge of the fact that assured had been rejected by
   another company, a false statement in the application
   that he had never been rejected would become immaterial.

5. SAME—FALSE STATEMENTS—CONNIVANCE OF AGENT.
   An insurance company is not bound by statements contained
   in an application, when not only the agent, but the as-
   sured, knows they are untrue, and calculated to deceive,
   and the application is to be forwarded to the company
   as the basis of its action.

6. SAME—NOTICE—QUESTION FOR JURY.
   In an action on insurance policies, defended on the ground
   of false statements in the application by assured, dis-
   puted testimony as to actual knowledge by the company,
   through its officers, that the statements were false, *held*,
   to present a question for the jury.

Error to Wayne; Davis, J., presiding. Submitted

October 16, 1918. (Docket No. 75.) Decided December 27, 1918.

Assumpsit by Sam Kane and another against the Detroit Life Insurance Company on certain policies of insurance. Judgment for plaintiffs on a directed verdict. Defendant brings error. Reversed.

*Frank H. Watson* (*M. J. Cavanaugh,* of counsel), for appellant.

*Drook & Kaufman* (*Fred H. Aldrich,* of counsel), for appellees.

KUHN, J. In this action it is sought to recover on two policies of insurance issued by the defendant upon the life of one Isrel Kane on November 26, 1915. In the application for insurance the applicant certified that he had read all the statements and answers in the application and agreed, on the part of himself and any person who may claim under the policy, that all the statements and answers so made, and all that may be made to the medical examiner in continuation of the application, are full, complete and true and are representations made as inducements to the issuing of the policy. He was subsequently examined by the company's medical examiner, and upon the strength of the application and this examination the two policies here in suit were issued. The plaintiffs are the sons of the insured and beneficiaries under these policies. The defendant filed a plea of the general issue, to which notice was attached to the effect that false and fraudulent statements were made to it in the application of insured and false and fraudulent statements were made in the statements to the medical examiner, referring to the following question and answer which occurred in the application:

"Has your application for life insurance ever been

declined or postponed by any other company or fraternal organization?    No."

—and the following in the medical examiner's report:

"Have you ever been declined or postponed by any life company?  (If so, give name of company.)   No."

The defendant in its notice alleges the falsity of these statements and charges the truth to be that the insured had made application to, and was declined by, the New York Life Insurance Company, November 16, 1915, and claimed that because of these false statements made in the application and to the medical examiner, the policies issued thereunder are void and not collectible.   Isrel Kane, the insured, died June 27, 1916, some seven months after the policies were issued, and it is the claim of the defendant that the defendant first discovered that the statements made by the insured in his application and statement to the medical examiner were false, after that time.   It is admitted that Kane had made an application to the New York Life Insurance Company, and the proofs show that he had been rejected by the company and that he had received this information prior to his making application for insurance to the defendant company.   The testimony further discloses that the application for insurance was written by one Herman Solomon, who at that time was agent for the New York Life Insurance Company, and was the agent who had written the application for Isrel Kane in that company, which had been rejected.   Solomon was called as a witness for the plaintiffs, who claimed the right to cross-examine him as though he were the agent of the defendant company, which agency was denied by the defendant, the defendant claiming that Solomon never was an agent of the company and never was authorized to write insurance for said company by any person empowered to authorize it.   It appears that the application, in most of its parts, is in the handwriting of

Solomon, and was signed, as agent, by Jacob Meltzer, a general agent of the company. The testimony of Solomon shows that he took the application to the insured, who signed it before the same was filled out, and it is his claim that he filled out a part of it and that the other portions thereof were filled out by a Miss Herber, who was the secretary of Mr. Meltzer, and that the insured never signed the application at all, but merely signed a blank, and that it was fixed up entirely by himself and Miss Herber. This statement is denied by Miss Herber in her testimony. It is his claim that the false answer to the statement complained of by the defendant, purporting to have been made by the insured in his application, was answered in that way for the reason that Miss Herber told him that it made no difference; that the Detroit Life Insurance Company was not interested whether he had ever been rejected or not, which statement is also denied by Miss Herber. A copy of the application and medical examination was attached to the policy and made a part thereof. Plaintiffs further claim that the insured could neither read nor write, and the testimony of Solomon showed that Meltzer was informed, prior to the making of the application by the insured, that the insured had been rejected by the New York Life Insurance Company prior to his application to the defendant company, which testimony is denied by Meltzer. There is also some testimony given by Mr. Solomon to the effect that Mr. Baty, the secretary of the company, had knowledge that the insured was a rejected risk before the delivery of the policies to the insured, which testimony is denied by Baty. Solomon's testimony further showed that he had been requested by Meltzer to bring risks rejected by the New York Life Insurance Company, upon applications secured by him, to the defendant company, and that it was pursuant to this arrange-

ment that the application of the deceased was brought to the defendant company. The insurance of Isrel Kane went onto the books of the company as the business of Meltzer, the city manager for the company, but Solomon was paid the regular commission paid to subagents of the company, and the books of the company showed the payment of this commission to Solomon.

At the close of the proofs, the following colloquy was had between the court and counsel:

"*The Court:* Anything further?
"*Mr. Watson:* Nothing on our part.
"*The Court:* Nothing further on your part?
"*Mr. Aldrich:* No, your honor.
"*The Court:* Gentlemen, you may be excused for a few moments until I call you in.
"*The Court:* I know the counsel upon both sides asked for directed verdict.
"*Mr. Aldrich:* I know we did, your honor.
"*Mr. Watson:* I don't think it should go to the jury."

Here followed a discussion between the court and counsel for the respective parties, and thereupon defendant's counsel presented certain requests to charge, the fourth of which read as follows:

"If you find from the evidence in this case that Isrel Kane made application for insurance in the defendant company and before the policy was written appeared before the medical examiner and there answered the questions propounded to him by the medical examiner and therein stated 'No' in reply to the question 'Have you ever been declined or postponed by any life company; if so give the name,' and if you find that he answered this question in the manner above, that answer was a misstatement and was a fraud upon the company; and if you find that the company had no knowledge that the answer was fraudulent and false, the plaintiffs in this case cannot recover, it being entirely immaterial that Mr. Solomon knew that it was false. The knowledge of Mr. Solo-

mon cannot be imputed to the company, he being a party to the fraud and apparently anxious to put through the insurance. And it is immaterial as to whether he will be deemed an agent of this company, or not, for the reason that an agent cannot co-operate with an applicant in perpetrating a fraud on the company and later on have the fraudulent act of the agent used for the purpose of excusing the applicant for making untruthful statements in his application for the insurance and in his examination by the medical examiner."

The court, however, directed a verdict for the plaintiffs, and counsel for appellees now say that the appellant is precluded from raising any question as to the nonsubmission of a question of fact to the jury, in view of the dialogue which occurred between the court and counsel, above set forth, and the following Michigan cases are relied upon: *Culligan* v. *Alpern,* 160 Mich. 241; *Germain* v. *Loud,* 189 Mich. 38; *Kyselka* v. *Assurance Co.,* 194 Mich. 430. The presentation to the court of the request to charge above set forth must be said to have negatived any intent on the part of counsel, if his statements to the court are to be so construed, to waive the right of his client to have the jury pass on the questions of fact involved in the controversy. In our opinion, this record clearly raises such questions of fact.

Section 9305, 2 Comp. Laws 1915, reads as follows:

"Any person who shall solicit an application for insurance upon the life of another shall, in any controversy between the assured or his beneficiary and the company issuing any policy upon such application, be regarded as the agent of the company and not the agent of the assured."

We can, therefore, assume that by virtue of this. statute, so far as any controversy is concerned between the assured, or his beneficiary, and the company issuing the policy upon such application, the per-

son soliciting the application must be regarded as the agent of the company and not the agent of the assured. Plaintiffs further claim that the offer by an agent duly authorized to write insurance for one company, of a rejected risk to another company is a perfectly legitimate transaction, even though he had no license from the last named company, by virtue of section 6, Act No. 124, Pub. Acts 1915 (2 Comp. Laws 1915, § 9144), which reads as follows:

"Any authorized agent of an insurance company transacting business in this State shall have the right to procure the insurance of risks or parts of risks, that have been refused by companies represented by him, in other like companies duly authorized to transact business in this State, but such insurance shall only be consummated through a duly licensed resident agent of the company taking the risk: *Provided, however,* That nothing herein contained shall be deemed to authorize the conducting of any insurance brokerage business in this State."

It conclusively appears that Solomon was not a regularly appointed agent for the Detroit Life Insurance Company and had no certificate of authority to act as its agent, and that being the case, the only business he could legally do for the Detroit Life Insurance Company would be to procure the insurance of risks, or parts of risks, that had been rejected by the companies represented by him, duly authorized to transact business in this State, and such insurance could only be consummated through a duly licensed resident agent of the company taking the risk. Whether or not the defendant company had knowledge that Kane had been rejected by any other insurance company was a question of fact for the jury, and the testimony is at variance in the record on this point, Solomon testifying that the officers of the company had such knowledge, and Meltzer, Baty and Miss Herber contradicting him with reference to his claims thereto.

Whether Kane actually knew of the false statements in his application and signed statement to the medical officer becomes immaterial, he having had them in his possession, as a part of the policies, for seven months, and it was his duty to know that the representations therein contained and which constituted the inducement for the issuance of the policies, were true. Silence during the life of the policy has been held to be persuasive proof of fraudulent intent. See *Metropolitan Life Ins. Co.* v. *Freedman,* 159 Mich. 114 (32 L. R. A. [N. S.] 298), and cases therein cited. If the jury should find that the defendant company, through its officers, Meltzer and Baty, had actual knowledge of the fact of Kane being a rejected risk in any other company, the false statement relied upon would become immaterial, but even under the theory advanced by counsel for plaintiffs, that Solomon, by virtue of the statute (2 Comp. Laws 1915, § 9305), above set forth, became, so far as this controversy is concerned, an agent for the defendant company, and he having full knowledge of the false statements, still his knowledge should not be imputed to the defendant company.

The rule sustaining this conclusion was announced in *Ketcham* v. *Accident Ass'n,* 117 Mich. 521, and is there thus stated:

"The courts have always been anxious to take care of the rights of the assured when the applicant has relied upon the agent informing the company what had been truthfully told to him about the character of the risk; but the courts never have said the company is bound by statements contained in an application, when not only the agent, but the assured, knows they are untrue, and calculated to deceive, and the application is to be forwarded to the company as the basis of its action. To so hold would put these organizations completely at the mercy of dishonest and unscrupulous agents."

See, also, *Haapa* v. *Insurance Co.*, 150 Mich. 467 (16 L. R. A. [N. S.] 1165, 121 Am. St. Rep. 627).

We are of the opinion that these questions of fact should have been submitted to the jury and that· at least the substance of the fourth request to charge should have been given to the jury for determination.

The judgment must therefore be reversed and a new trial granted, with costs to the appellant.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.