RUGGIRELLO *v.* DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE.

1. Insurance—Application—Fraud of Agent.

Insurer cannot avoid liability under policy issued upon an application containing false answers to interrogatories contained therein where the false answers are inserted by its agent although insured answered truthfully and without fraud, collusion or actual knowledge of falsity of answers inserted or the existence of circumstances from which constructive knowledge might be imputed to him.

2. Same—Fraud by Agent and Insured.

Insurer is not bound by statements contained in an application, when not only the agent, but the insured, knows they are untrue, calculated to deceive and application is to be forwarded to company as basis of its action.

3. Same—Insured Presumed to Know Contents of Application.

If application for insurance is attached to the policy and thus in possession of the assured, latter will generally be charged with knowledge of its contents, unless misled by insurer or its agent, when insurer seeks to avoid liability under policy for false statements in application even though insured may claim he did not read his application and was unaware of false statements appearing therein.

4. Same—Automobile Theft Coverage—Statement as to Value—Question for Jury.

In action by insured under automobile insurance policy covering loss by theft, whether statement in application that car cost $2,500 was a falsity calculated to deceive insurer *held,* under the circumstances, a question for the jury, where agent filled out application after applicant had stated he paid $1,800 in cash for the car but that it would have cost him $2,300 or $2,500 had he purchased it on time.

5. Same—Collusion—Directed Verdict—Record.

In action to recover under policy covering theft of automobile, record *held,* insufficient to sustain directed verdict for insurer on ground that applicant and insurer's agent acted in col-

lusion to insert false statement in application for purpose of securing more insurance than applicant was entitled to under the circumstances.

Appeal from Wayne; Miller (Guy A.), J. Submitted April 5, 1935. (Docket No. 115, Calendar No. 37,834.) Decided May 17, 1935.

Action by Antonio Ruggirello against Detroit Automobile Inter-Insurance Exchange, a reciprocal inter-insurance exchange, on an automobile insurance policy covering theft losses. Directed verdict and judgment for defendant. Plaintiff appeals. Reversed.

*Joseph A. Cassese,* for plaintiff.

*Howard D. Brown* (*George H. Cary,* of counsel), for defendant.

Butzel, J. After purchasing a used car, 1930 model, direct from the Cadillac Motor Car Company, plaintiff applied to a representative of defendant insurance company, on June 27, 1931, for a policy in the amount of $1,800, insuring the car against loss by theft, etc. The agent examined the car, and upon being informed by plaintiff that it had cost him only $1,800, stated that the company would not give him more than $1,400 of insurance. Plaintiff argued with the agent, told him that he had paid $1,800 in cash, and that if the car had been purchased on time the cost would have been from $2,300 to $2,500, rather than $1,800. The agent thereupon agreed to issue a policy for $1,800 and filled in an application, which plaintiff signed. The application stated the list price of the car when new as $3,595, and the cost to plaintiff as $2,500. Plaintiff exhibited to the agent his bill of sale, which gave

the purchase price as $1,800. The policy, with a copy of the application set forth therein, was duly delivered to plaintiff. Shortly thereafter, plaintiff added to the machine some further accessories costing slightly over $100, the amount of insurance was increased to $2,000, a rider to that effect being attached to the policy. Almost a year later the car was stolen. When plaintiff's attorney made out the proof of loss, which had been drawn by defendant's adjuster, he noticed that $2,500 had been written in the proof as cost to the assured. He thereupon erased this figure and changed it to $1,800, and mailed the proof back to the company. Defendant denied liability on the ground that the purchase price of the car had been misrepresented in the application. The policy provided that all statements appearing in the application were known to and warranted by the assured to be true, and that the policy was issued by the company relying upon the truth thereof; that the policy should be null and void if any of such statements were untrue, or if the assured concealed or misrepresented any material fact or circumstance concerning the insurance or the subject thereof; that no change could be made in the contract unless by indorsement; and that neither notice to, nor knowledge possessed by, any agent or other person should be held to waive any agreement, condition or statement in the policy.

Plaintiff brought suit on the policy, and testified at the trial that he had stated all the facts to defendant's agent; that he signed the application, as prepared by the agent, without reading it, and that he did not subsequently read the policy or the copy of the application, and therefore did not notice that the agent had written in the figure of $2,500 as cost to the assured. Plaintiff, an Italian by birth, testi-

fied that he could not read or write English, but later stated that he could read the amount of the insurance, or, as he expressed it, "Very few words I can read," and as a matter of fact he did read, while on the witness stand, the particular parts of the application containing the false statement, and other parts. At the conclusion of the testimony for plaintiff, the trial judge directed a verdict for defendant, stating that plaintiff and defendant's agent had colluded to defraud the company, that plaintiff was able to read the pertinent parts of the application and was therefore bound by its terms, and that the misrepresentation in the application as to the cost of the car constituted a breach of warranty which voided the policy.

It is generally held that:

"If an application for insurance is drawn by an agent of the insurer, who fills in false answers to the interrogations contained therein, which are truthfully answered by the insured, without fraud, collusion, or actual knowledge of the insured or the existence of circumstances from which constructive knowledge of such falsity might be imputed to him, the insurer cannot rely upon the falsity of such answers in seeking to avoid liability under the policy issued upon the application."   81 A. L. R. 835.

See *North American Fire Ins. Co.* v. *Throop*, 22 Mich. 146 (7 Am. Rep. 638); *Temmink* v. *Metropolitan Life Ins. Co.*, 72 Mich. 388; *Beebe* v. *Ohio Farmers Ins. Co.*, 93 Mich. 514 (18 L. R. A. 481, 32 Am. St. Rep. 519); *Simmons* v. *National Live Stock Ins. Co.*, 187 Mich. 551 (Ann. Cas. 1917D, 42). On the other hand, the company is not bound by statements contained in an application, when not only the agent, but the assured, knows that they are untrue, and calculated to deceive, and the application is to be

forwarded to the company as the basis of its action. *Ketcham* v. *American Mutual Accident Ass'n,* 117 Mich. 521. And even though the assured may claim that he did not read his application, and was unaware of the false statement appearing therein, if the application was attached to the policy and thus in the possession of the assured, the latter, unless misled by the insurer or its agent, will as a general rule be charged with knowledge of the contents, it being his duty to know that the contents of the application set out in the policy are true. 4 Couch's Cyclopedia of Insurance Law, p. 2865, § 869, citing *Bonewell* v. *North American Accident Ins. Co.,* 167 Mich. 274 (Ann. Cas. 1913A, 847). Also, see *Metropolitan Life Ins. Co.* v. *Freedman,* 159 Mich. 114 (32 L. R. A. [N. S.] 298); *Kane* v. *Detroit Life Ins. Co.,* 204 Mich. 357; and *Asposito* v. *Security Benefit Ass'n,* 258 Mich. 507, in which this court quoted with approval from *New York Life Ins. Co.* v. *Fletcher,* 117 U. S. 519 (6 Sup. Ct. 837). See, also, *Layton* v. *New York Life Ins. Co.,* 55 Cal. App. 202 (202 Pac. 958); *Hook* v. *Michigan Mutual Life Ins. Co.,* 44 Misc. Rep. 478 (90 N. Y. Supp. 56); and *Modern Woodmen of America* v. *Angle,* 127 Mo. App. 94 (104 S. W. 297).

However, although in the case at bar the application was attached to the policy and in plaintiff's possession for almost a year, and plaintiff, under the authorities above cited, must therefore be charged with knowledge of its contents, we believe that the peculiar facts of the instant case take it out of the general rule as stated in *Ketcham* v. *American Mutual Accident Ass'n, supra.* The alleged misstatement here relied upon by the insurer is not an out and out falsity, concocted out of thin air, but had a basis in the fact related by plaintiff

to the defendant's agent—namely, that if plaintiff had purchased the car on time he would have had to pay from $2,300 to $2,500.  A brief review of what transpired between plaintiff and the agent prior to the making out of the application is pertinent here.  Plaintiff testified that the agent, on being informed that the car had cost the plaintiff $1,800, at first refused to write a policy for more than $1,400; but that the agent later agreed to write an $1,800 policy after plaintiff had proffered the further information that the car would have cost from $2,300 to $2,500 if purchased on time.  Conceding that plaintiff was bound to know what was in the application, which was delivered to him with his policy, and that he must therefore be held to have known that the application contained the answer, "$2,500," in reply to the question, "cost to assured," would it then necessarily follow that plaintiff knew the statement was a falsity, calculated to deceive the company?  Or in view of what had transpired, as above stated, might not the plaintiff have assumed, in good faith, particularly in view of his imperfect knowledge of the English language, that the answer inserted by the agent represented the interpretation placed by the company upon the facts as stated to the agent, and that such statement was therefore not a falsity calculated to deceive the insurer?  At least this presents a question for the jury.  It cannot be said as a matter of law, on the record as here presented, that plaintiff was an instrument in the perpetration of a fraud, or, as found by the trial court, that plaintiff and the agent acted in collusion to insert a false statement in the application for the purpose of securing for plaintiff more insurance than he was entitled to under the circumstances.

Two early decisions of this court are applicable here. In *Michigan State Ins. Co.* v. *Lewis,* 30 Mich. 41, the insurer claimed that the policy was void on the ground that the application declared the property of the insured to be incumbered by a mortgage of "near $5,300," while actually the amount was larger, due to the accumulation of interest. The assured had stated the true facts to the agent of the company. The court held:

."If the agent had all the facts before him, and chose to fill out the application in this manner, stating the original amount of the mortgage instead of the amount then owing, what could be more natural than for the applicant to infer that, by the company's construction of the question put to him, it was sufficiently answered by giving the original amount? Was he, especially if a person little accustomed to such contracts, or to business contracts in general, as this man would seem to have been, to insist upon more accuracy, and to refuse to sign the paper unless it was had, when the company, through its agent, for whose benefit it was made, and to whom it was to give information, was fully satisfied with it as it was? This is the question which the case presents, and it is obviously not one of waiver. Lewis has requested the company to waive nothing; he has simply accepted such papers as have been prepared for him by the agent, after giving all the necessary information to enable them to be drawn as they should be. We have had occasion several times to hold in these insurance cases, that a company which has thus acted with full notice of the facts, and received a party's money under circumstances leading him to suppose he was receiving in consideration thereof a valid contract of indemnity, must, in equity and good conscience, be held estopped from repudiating the contract afterwards.''

And in *North American Fire Ins. Co.* v. *Throop, supra,* the court stated:

"In all these cases, where the particular fact called for by an interrogatory is unimportant, or nearly so, under the circumstances of the particular case, it is very easy for the assured to be led to suppose that such interrogatory, which he knows was prepared generally and for the purpose of meeting the cases in which it would be of practical importance, was not to be relied upon in his own case, and if the insurer himself, or his agent, drafts an answer to such interrogatory, in which he treats it as immaterial and does not observe strict accuracy in his statement of facts, the assured might well suppose he would be thought captious and hypercritical if he should insist upon answers exactly correct, when the party seeking the information, and who alone was interested in it, was satisfied with statements less accurate, and which, with full knowledge of the facts, he had written out to suit himself."

Also, see, *Insurance Co.* v. *Mahone,* 21 Wall. (88 U. S.) 152.

We believe that there was a proper question for the jury, and that the trial court therefore erred in directing a verdict for defendant. The judgment is reversed, with costs to plaintiff, and the case remanded for a new trial.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.