**GREAT NORTHERN LIFE INS. CO. v.
VINCE et al.**
No. 8493.

Circuit Court of Appeals, Sixth Circuit.
March 11, 1941.

Ill., and John J. Temple, of Detroit, Mich., on the brief), for appellant.

David E. Roberts, of Detroit, Mich. (David E. Roberts and Dale D. Libkuman, both of Detroit, Mich., on the brief), for appellees.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

The appellant, upon the death of its insured, conceiving itself defrauded by false statements and representations in the application for the policy, refused to pay the claim of the beneficiary, and brought suit in the court below by bill in equity for a declaratory judgment or decree pursuant to the Federal Declaratory Judgment Act, 28 U.S.C.A. § 400, praying that the court adjudge and decree the legal relations of the parties to the subject matter, adjudge the insurance policy to be null and void, and decree that it be delivered up and canceled. Appellee Andris was joined as party defendant because of assertion by him of some claim to the proceeds of the policy as a co-partner of the deceased. The beneficiary answered denying the appellant's right to relief, and cross-claimed for a declaration of the policy as valid, and for judgment in the sum mentioned therein.

The defendants requested determination of all triable issues of fact by a jury, and over the appellant's protest a jury was impaneled and the case tried, in all substantial respects, as a suit at law. The appellant's motion for directed verdict at the conclusion of all of the evidence, was overruled, a verdict was returned upon the cross-claim and the appellant's motion for judgment notwithstanding the verdict, or in the alternative for a new trial, denied. Andris, having disclaimed any interest in the policy, the bill was dismissed as to him and judgment entered for the beneficiary alone.

The claim of error includes denial of plaintiff's motion to discharge the jury; denial of its motions for directed verdict, and for judgment notwithstanding the verdict, or in the alternative for a new trial; the inadmissibility of evidence received; and errors and omissions in instructing the jury.

The first question presented by the appeal is not unattended with difficulty. The nature of an action for declaratory relief under the statute, is said to be "nei-

Charles R. Holton, of Chicago, Ill. (Whitman, Holton & Tews, of Chicago,

ther legal nor equitable, but sui generis." Borchard, Declaratory Judgments, 120. The Federal Declaratory Judgment Act provides [§ 274d(3), 28 U.S.C.A. § 400 (3)], that when a declaration of right involves the determination of issues of fact triable by a jury, such issues may be submitted to the jury in the form of interrogatories, with proper instructions by the court, whether a general verdict be required or not. No interrogatories were submitted to the jury, and none were sought by either litigant. It has been thought that the phrase "triable by a jury" relates to a case triable as of right under the Seventh Amendment to' the Federal Constitution, and that it was not the intent of Congress, when it changed the form of proceeding and permitted an action for declaratory relief, that this should affect the right of parties to a trial by jury as it had formerly existed. Pacific Indemnity Co. v. McDonald, 9 Cir., 107 F.2d 446, 131 A.L.R. 208. Compare Ætna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321; United States Fidelity & Guaranty Co. v. Koch, 3 Cir., 102 F.2d 288. In.the principal case, however, the opinion pointed out that the trial court was of the view that some issues of fact were essentially equitable in nature, and others essentially legal, and disposed of them accordingly. This course was not disapproved.

Our difficulty resides in the fact that the federal courts can render no judgment at law directing cancellation of a contract for fraud, since this is a form of relief which a court of equity alone can give, and in the fact that the basis of equitable relief, when cancellation is asked, is the necessity of protecting the suitor from irreparable injury when there is manifest danger that his defense at law on the policy will be lost or prejudiced. Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440; American Life Ins. Co. v. Stewart, 300 U.S. 203, 57 S.Ct. 377, 81 L.Ed. 605, 111 A.L.R. 1268. The circumstance usually relied upon as indicating the need for equitable relief is the impending expiration of the period during which the insurer may assail the validity of the policy unhampered by the incontestable clause. There is no such special circumstance here, and so no suit in equity may be entertained to cancel the policy because there exists an adequate legal remedy in defending a suit upon the policy which, though not pending, is imminent.

The relief prayed can therefore be based only upon the declaratory judgment statute. There being no question of the existence of a controversy, the jurisdiction below to entertain the plaintiff's suit was clear, Ætna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000; Maryland Casualty Co. v. Pacific Oil & Coal Co., 61 S.Ct. 510, 85 L. Ed. ——, decided February 3, 1941, though relief is limited to that provided by the statute. That the courts of Michigan provide in such circumstances the equitable remedy of cancellation, is not controlling. Atlas Life Insurance Co. v. W. I. Southern, Inc., 306 U.S. 563, 59 S.Ct. 657, 83 L. Ed. 987.

While the court is unable to grant the equitable remedy of cancellation and cancellation may not be sought in the federal courts in a suit at law, and while the relief prayed in the counterclaim presents triable issues of fact in the decision of which the defendant was entitled to the verdict of a jury, though such issues should have been submitted upon special interrogatories for the guidance of the court in adjudication of the declaratory relief prayed, yet the issue as to the validity of the policy is so squarely raised upon the motion of the· appellant for directed verdict and motion for judgment, that we find no need to decide whether, in the usual case, the issues raised by the bill and answer should first have been determined by the court before submission to the jury of the counterclaim, and we shall be able by our mandate to make such decision as shall dispose of the entire case.

The insured, William A. Vince, applied for the policy in dispute, on April 29, 1937. He was required to furnish certain information in respect to his insurability, and to answer certain questions contained in the application blank. To the question whether, during the preceding seven years, he had consulted any physician not previously mentioned, the answer was "No." To the question whether he had received treatment in any hospital, sanitarium, or asylum, the answer was also "No." The application blank more specifically sought information of various disorders including those of the respiratory system, and an affirmative answer required the name of the disease, the number of attacks and their date, duration and results, together with the name and address of the physicians consulted in connection therewith, but all

were answered in the negative. To the still more specific question whether the applicant had ever had any disorder of the respiratory system, such as pneumonia, asthma, bronchitis, chronic cough, tuberculosis, spitting of blood, etc., the answer of the applicant was that he had never had any disorders of the respiratory system, and had never consulted any physician in connection with such disorders.

It appears, however, by the admissions of the appellee, or by uncontroverted evidence, that the applicant had not only had an attack of pneumonia in 1926–27, but that he had had a second attack in 1931–32, which required treatment in a hospital in Philadelphia and consultation with physicians there, which was accompanied by the spitting of blood, and which necessitated treatment for a considerable period in Jackson and Chicago, and was variously diagnosed as lung involvement, lung abscess, infection of the hilus glands, and bronchiectasis. He made claim to and received benefits from an association maintained by his employer, and received disability compensation for a period of seven months, his recovery being completed on or about July 5, 1932. The insured died on March 14, 1938, as the result of streptococcal infection of the throat.

■ That the answers made over the signature of the insured in the application blanks were false, is not open to dispute. The appellee sought to avoid the legal consequences of such representations by reliance upon the terms of the Michigan Statute, Act 256, Public Acts 1917; by evidence of Andris, partner of the decedent, who was present at the examination, that the questions were, in fact, truthfully answered; and by invoking the principle of estoppel in an effort to show that the insurer was not deceived.

The Michigan Statute provides: "The falsity of any statement in the application for any policy * * * shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer." Part 3, c. 2, § 17.

While the Michigan court has recognized much confusion in the statement of the law as to the liability of an insurer when false statements have been made in the insurance application, and concedes that its decisions rest so largely on varying facts that the ruling in one case may not be at all adaptable to the facts in another, Asposito v. Security Benefit Ass'n, 258 Mich. 507, 243 N.W. 37, yet, the court has constantly adhered to the doctrine that concealment of a material fact which the insurer had a right to know, voids the policy, and that a false statement with respect to serious illness, hospitalization, or consultation with physicians, bears a direct relation to the acceptance of the risk and the hazard assumed by the insurer, as a matter of law. Rathman v. New Amsterdam Casualty Co., 186 Mich. 115, 152 N. W. 983, L.R.A.1915E, 980, Ann.Cas.1917C, 459; Bellestri-Fontana v. New York Life Ins. Co., 234 Mich. 424, 208 N.W. 427; Mutual Life Ins. Co. v. Geleynse, 241 Mich. 659, 217 N.W. 790, 56 A.L.R. 702; Metropolitan Life Ins. Co. v. Carter, 252 Mich. 432, 233 N.W. 370; New York Life Ins. Co. v. Bahadurian, 252 Mich. 491, 233 N.W. 390. Our own earlier exploration into the law of Michigan led us to a similar conclusion. Lawrence v. Connecticut Mutual Life Ins. Co., 6 Cir., 91 F.2d 381. See, also, Haddad v. New York Life Ins. Co., 6 Cir., 42 F.2d 651; New York Life Ins. Co. v. Cohen, 6 Cir., 57 F.2d 494; Lyttle v. Pacific Mutual Life Ins. Co., 6 Cir., 72 F.2d 140. While there may have been departures from this rule in cases of minor disorders, we think there have been none in respect to ailments as serious as those here concealed.

■ Andris testified that he was present at the examination of the insured, and that the insured had told the physician that he had had pneumonia for several months, but that it was not serious; that he had also told the physician that he had received medical treatment within the period of five or six years prior to the issuance of the policy. The court, recognizing that under the law of Michigan the cross-complainant was estopped to deny that the insured made the false statements that appeared over his signature, since the evidence disclosed that he had received the policy with a copy of the application attached thereto and had, without objection, retained it in his possession until his death, nevertheless permitted this evidence to go to the jury upon the issue of the insured's intention to deceive, instructing the jury that if the false statements had not in fact been made they could not, of course, indicate an intent to deceive the insurer. Whether or

not the rule of estoppel precludes the admission of such evidence for every purpose, we do not find it necessary to decide. Taking the evidence of Andris at its full value, and viewing it in the light most favorable to the appellee, it does not present substantial evidence of truthful response to the questions in the application. The testimony of Andris goes no further than to support an alleged statement by the applicant' that he had had an attack of pneumonia which was not serious. When the disease was suffered is not indicated, nor is there any reference in the evidence to two attacks, nor to the seriousness of either. It is now common knowledge that there are many types of pneumonia infection, varying greatly in their virulence. It cannot be denied, upon this record, that the disease suffered in 1931–32 was of an extremely serious character. The insurer was entitled to know its seriousness, or to such information which, if imparted to it, would have permitted an investigation. Bellestri-Fontana v. New York Life Ins. Co., supra; Metropolitan Life Ins. Co. v. Carter, supra.

That the insurer was willing to accept the hazard upon disclosure of a single attack of pneumonia, not serious, is no evidence that it would have accepted the risk if it had knowledge of both maladies or the serious character of either. The susceptibility of an applicant for insurance to specific types of infection is material to the acceptance of the risk. Indeed, the answer of the appellee discloses that the insured contracted pneumonia for a third time subsequent to the issuance of the policy. Nor is it important that subsequent medical testimony throws doubt upon the accuracy of the earlier diagnosis that the insured suffered from bronchiectasis. The insurer sought complete information as to all respiratory diseases and was entitled to know, or to the means of ascertaining not only whether such diseases actually had been suffered, but whether there had been any reputable diagnosis of their presence. The jury may not be permitted to exercise the judgment which the insurer alone had the right to make in determining whether to accept the risk.

█ In support of the contention that the insurer was estopped to claim that it was deceived by the application, the appellee was permitted to introduce evidence to show that about the time the insured applied for the policy here in issue, he had made applications for insurance in other companies, and that such applications had disclosed the pneumonia attack in 1931–32. This, with evidence that might warrant an inference of an exchange of information between the insurer and the other companies, led the court to submit to the jury an issue of fact as to whether the insurer had been put upon inquiry which, if pursued, would have disclosed to it the true facts in the applicant's medical history. But if the inquiry had been pursued, it is clear that nothing in the applications would have disclosed either definitely or symtomatically, actual or suspected bronchiectasis or lung abscess in 1931–32. There is clear authority in Michigan decisions that even its own earlier records do not put the insurer upon notice of the falseness of statements in an application unless there is some circumstance which directs attention to them. Brown v. Metropolitan Life Ins. Co., 65 Mich. 306, 32 N.W. 610, 8 Am.St. Rep. 894; Rhode v. Metropolitan Life Ins. Co., 129 Mich. 112, 88 N.W. 400; Id., 132 Mich. 503, 93 N.W. 1076. An intention to deceive necessarily follows as a matter of law from concealment of material facts, unless the presumption is overthrown by substantial evidence, and this is particularly true, when the policy and a copy of the application has been held by the insured, without objection, for a considerable period. Ruggirello v. Detroit Automobile Inter-Ins. Exchange, 272 Mich. 44, 260 N.W. 787; Kane v. Detroit Life Ins. Co., 204 Mich. 357, 170 N.W. 35. Our conclusion is that under the law of Michigan the representations were false; that from their falsity a presumption arises that they were made with intent to deceive; that this presumption was not overcome by substantial evidence; and that the representations, as a matter of law, were material and affected the hazard.

█ The court should have granted the motion for directed verdict. Insofar as it encompassed, by implication if not expressly, a prayer that the appellee should take nothing by her counterclaim, it will upon remand be granted, notwithstanding the verdict, Montgomery Ward & Co. v. Duncan, 61 S.Ct. 189, 85 L.Ed. ——, decided December 9, 1940. While we have concluded, in our earlier discussion, that equitable relief by a decree for the cancellation of the policy is not within our power to grant, we may, under the Declaratory Judgment Act, direct and so do direct the

entry of a decree adjudging the policy of insurance here involved to be null and void.

Reversed and remanded for further proceedings pursuant herewith.