Stacey **SIMMONS**, Plaintiff–Appellant,

v.

**ALLSTATE LIFE INSURANCE COMPANY and Maurice Cole,** Defendants–Appellees.

No. 94–1571.

United States Court of Appeals, Sixth Circuit.

Argued May 8, 1995.

Decided Sept. 18, 1995.

Timothy E. McDaniel (briefed), Carl C. Wilson, Jr. (argued), McCoy & McDaniel, Ann Arbor, MI, for plaintiff-appellant.

Mark K. Riashi (argued and briefed), Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, for defendants-appellees.

Before: SUHRHEINRICH and DAUGHTREY, Circuit Judges; HEYBURN, District Judge.*

MARTHA CRAIG DAUGHTREY, Circuit Judge.

This diversity action was brought by the plaintiff-appellant, Stacey Simmons, in an attempt to recover the proceeds of a life insurance policy allegedly in effect at the time of death of the insured, Simmons's fiance, John Journe. The district court granted the motion for summary judgment filed by Allstate Life Insurance Company and also dismissed the complaint against Maurice Cole, an Allstate agent, for lack of *in personam* jurisdiction. On appeal, Simmons alleges that the court did in fact have jurisdiction over the person of Cole and that Cole's apparent authority to enter into the insurance contract on Allstate's behalf bound the company to provide the benefits contained in the policy. For the reasons given below, we disagree and affirm the judgment of the district court. We conclude, furthermore, that Allstate's request for sanctions under Federal Rule of Appellate Procedure 38 has merit and should be granted.

The facts in this case, while outrageous, are largely undisputed. Indeed, the appellant's brief on appeal fails altogether to set out a statement of fact, leaving us to depend

---

* The Honorable John G. Heyburn, II, United States District Judge for the Western District of Kentucky, sitting by designation.

on the appellee's brief and our own independent review of the record.

That record shows that in December 1991, Maurice Cole, an insurance agent and the brother-in-law of Stacey Simmons, visited Michigan from his North Carolina home in order to spend the holidays with his children.[1] While in the state, Cole visited with Simmons and Journe at the couple's apartment. During the visit, Journe, who was interested in purchasing life insurance, raised the subject of such insurance with Cole and discussed with him various aspects of the application process. Cole informed the couple that any policy application must be completed in North Carolina, however, because Cole was not licensed as an insurance agent in Michigan. At that time, therefore, discussions ended and Simmons and Journe informed Cole, "Okay, we'll get back."

By the end of that meeting, or at least by late the following month, Cole was aware of much of Journe's past history. For example, he knew that Journe had previously been shot in the head, that he had been hospitalized on several occasions, and that he suffered from epilepsy that was then controlled by medication. Cole was also aware that Journe's driver's license had been suspended and that the earlier shooting of Journe was believed to have been related to involvement with illegal drugs. The agent supposedly assured his sister-in-law and her fiance, however, that Journe's medical condition and past history would not affect his insurability.

When Simmons and Journe later visited Cole in North Carolina on January 20, 1992, Cole agreed to prepare a $1,000,000 insurance policy application on Journe's life. While filling out that application, despite the knowledge he already had concerning the applicant's history, Cole checked boxes on the form that indicated Journe had no significant medical problems and had not suffered a revocation of his driving privileges as a result of prior moving violations. In fact, in a letter to Allstate accompanying Journe's application, Cole stated, "Based on John's lifestyle and his current salary I feel he is a [sic] excellent risk and that issuing him a policy would not adversely affect Allstate in any way. I wish I was as healthy and clean cut as John." Although Simmons and Journe signed the application indicating that all information provided was true and correct, the plaintiff later stated in her deposition that she was not aware of Cole's misstatements. Cole himself corroborated Simmons's account of the situation and stated that, because he was interested in having the application approved, he had simply pushed the application in front of Simmons and Journe and told them to sign it. Cole also suggested in his deposition that neither Simmons nor Journe were aware that he was providing incorrect information on the application form.

After signing the application for the $1,000,000 policy, Simmons and Journe tendered a check to Cole for the applicable premium. Cole gave Journe only a temporary insurance agreement at that time, however, pending review of the entire application by Allstate's underwriters. Journe was further informed that the $500,000 temporary insurance policy would not become effective, under the express terms of the policy, until all required medical exams were conducted.

On February 6, 1992, Allstate sent a letter to Journe, again informing him that the coverage under the temporary $500,000 policy would "start and stop as described in the Agreement." Pursuant to that contract, a medical examination was considered a prerequisite for initiation of coverage and coverage under the temporary policy would extend only until a final decision on the $1,000,000 policy was reached or for 60 days, whichever occurred first. Furthermore, because initial coverage was limited under the temporary agreement to $500,000, the letter also contained a refund of that portion of his premium payment attributable to the requested second $500,000 in coverage. Simmons and Journe acknowledged both their receipt of the letter and their understanding that the $1,000,000 policy was not yet in effect by cashing the refund check from Allstate.

---

1. Cole was then separated from his wife, Simmons's sister, who had moved with the children from North Carolina to Michigan.

Finally, on February 14, 1992, Journe underwent a medical examination at his residence in the Detroit area. Dr. Morris Mickelson conducted the examination and stated in a later deposition that all answers given by Journe to questions related to the proposed insured's medical condition "are accurately reflected in the February 14 Medical Report." Both the medical report and Mickelson's affidavit indicate, however, that during the examination, Journe "did not disclose that he had been shot in the head in December 1988, Mr. Journe did not disclose that he had suffered from epileptic seizures, and Mr. Journe did not disclose that he had been hospitalized as a result of the gunshot wound and epileptic seizures." [2]

On March 17, 1992, a month after the temporary insurance policy purportedly went into effect, Journe disappeared. He had still not returned home or been located by March 30, 1992, when Simmons received notification from Allstate that the company would not issue the requested insurance policy on Journe's life because essential medical reports had not been supplied as promised. The notification continued by indicating that a full refund for premium payments already made was enclosed and that "[a]ny coverage that may have existed under the receipt you received in exchange for this payment has terminated." Simmons later cashed the refund check issued in the amount of the premium for the temporary $500,000 policy.

On April 30, 1992, Journe's body was discovered in the trunk of a car parked at the Detroit airport. He had again been shot in the head, and the badly decomposed nature of the corpse led the medical examiner to conclude that Journe had probably died around March 17, the date of his original disappearance.

Simmons filed a claim on May 16 for $500,000 under the terms of the temporary insurance agreement that was ostensibly in effect from February 14, 1992, when Journe underwent Doctor Mickelson's physical exam, until March 30, 1992, when Allstate informed the plaintiff that all coverage of Journe provided by the company was terminated. That claim was denied by Allstate, however, because of the material misrepresentations made by Journe during the application process concerning his medical history and past driving record. Allstate further noted that the express terms of the temporary insurance agreement stated, "If in the answers ... in the application, there is fraud or misrepresentation material to the home office underwriters' acceptance of the risk, then no insurance starts under this Agreement." An affidavit provided by a staff underwriting consultant for Allstate with more than 36 years of experience as an underwriter indicated that the answers and information provided by Journe in this matter were material and that Allstate would have declined both the temporary and the total insurance requests had pertinent inquiries been answered truthfully and completely.

After being informed about the denial of her claim for benefits, Simmons filed a lawsuit in Michigan state court against both Allstate and Maurice Cole for payment of benefits under the $500,000 temporary insurance agreement. Specifically, she sought recovery under a breach of contract theory, an estoppel theory, a breach of fiduciary duty theory, and a waiver theory. Allstate, claiming complete diversity of parties, then sought removal to federal district court.

For some unexplained reason, the plaintiff, after removal of the case to federal court, filed an amended complaint that abandoned all claims under the $500,000 temporary policy. Instead, Simmons reiterated the claims made in the original complaint but sought recovery of $1,000,000 on each cause of action. She also added an additional claim for payment of penalty interest by Allstate for refusing to pay her claim in a timely manner.

---

**2.** Despite claiming in her deposition that she did not know or remember if Journe ever informed Mickelson of his prior gunshot wound and hospitalizations, Simmons later submitted what purported to be an affidavit in which she claimed that, during the physical examination by Mickelson, "John Journe stated he had been previously hospitalized at Providence Hospital following an automobile accident in which he received a gunshot wound." Interestingly, the affidavit appears to have been signed by plaintiff's counsel, not by Simmons herself. Consequently, the district court properly refused to consider the affidavit as evidence.

Cole never responded to the complaint and a clerk's entry of default was eventually entered against him. The district court, however, issued an order directing the plaintiff to show cause why Cole should not be dismissed because of the court's lack of personal jurisdiction over him. Despite the plaintiff's response to that show cause order, the court ordered that the complaint against Cole be dismissed. The motion for entry of a judgment of default against Cole was thus denied as moot.

Both Simmons and Allstate filed motions with the district court requesting that summary judgment be entered in their favor. On April 14, 1994, the court denied the plaintiff's motion and granted summary judgment in favor of Allstate. In so ruling, the district judge concluded:

> Further, the Court finds that the complaint fails to set forth actionable claims against either defendant Cole or Allstate. The language of the complaint, consistent with the prayers for relief, seeks recovery of $1 million. It is evident that, as stated under the terms of the Application, and based upon the March 30, 1992 rejection letter, that Allstate never accepted the Application for the $1 million policy. Plaintiff has not presented any basis for finding that Allstate was required to accept the Application and deliver the policy. Moreover, plaintiff cashed the check which Allstate enclosed with the rejection letter, which constituted a refund of the premiums which had been paid. Thus, while Journe may have been insured under the Temporary Insurance Agreement on March 17, 1992, his purported date of death, there was never coverage under a $1 million policy. As the causes of action asserted against both Allstate and Cole are all based solely on alleged coverage under the $1 million policy, all must fail. Summary judgment is therefore appropriate in favor of both defendants.

The court then continued by ruling that, even had Simmons sought relief under the terms of the $500,000 temporary insurance agreement, Allstate would not have been liable because of Journe's connivance with Cole and his intentional misstatements and material omissions of fact during the application process. From these rulings, Simmons now appeals.

■ We conclude that the district court's order is correct in all respects. There is, simply, no basis in fact or in law on which the appellant can claim coverage under the $1,000,000 policy and, thus, summary judgment in favor of Allstate was fully justified. Moreover, as the district court noted, even if the plaintiff had sought recovery under the $500,000 temporary policy, Allstate would still be entitled to summary judgment based on Michigan's "connivance exception." Under that rule, the district court explained, "if both the insured and the agent know that the information contained in the application forwarded to the insurer is untrue and calculated to deceive, the insurer is not bound by the application," citing *Kane v. Detroit Life Ins. Co.*, 204 Mich. 357, 364, 170 N.W. 35 (1918), and *Pellenz v. Knights of Columbus*, 147 Mich.App. 438, 441–42, 382 N.W.2d 793, 794–95 (1985).

■ Nor did the district court err in deciding that it lacked personal jurisdiction over Maurice Cole and that the complaint, as it related to Cole, should be dismissed. The appellant argues that Cole had sufficient "minimum contacts" with the State of Michigan, based on the facts that Cole occasionally visited his children there, that he formerly resided there, that he first discussed the issuance of the subject insurance policy while in the state, that he had once applied for a nonresident's license to sell insurance in Michigan, and that he agreed to return to Michigan for a deposition at Allstate's request. None of these allegations is sufficient to bring Cole under Michigan's *general* personal jurisdiction statute, Mich.Comp.Laws Ann. § 600.701, or its *limited* personal jurisdiction statute, Mich.Comp.Laws Ann. § 600.705. Nor has the plaintiff met the constitutional hurdles set out in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), as that case has been most recently interpreted by this court in *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1298 (6th Cir.1989), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990).

■ Finally, we address Allstate's request for sanctions under Rule 38, Fed.R.App.P., based on the frivolous nature of this appeal. Rule 38 presently provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."

The Advisory Committee Notes explain that the rule requires a separately filed motion from the appellee or specific notice from the court so that the party threatened with the sanctions will have an adequate opportunity to respond to the request. "A statement inserted in a party's brief that the party moves for sanctions is not sufficient notice."

■ The requirement that a separate motion be filed by the appellee or that notice be received from the court in order to impose Rule 38 sanctions did not, however, become effective until December 1, 1994. The appellee's brief in this case was filed on August 30, 1994, and, in conformity with the previous version of Rule 38,[3] simply requested in that filing that sanctions be imposed. Even though Allstate has not chosen to comply with the letter of amended Rule 38 by filing a separate motion with this court for imposition of sanctions for a frivolous appeal in the months since the new rule became effective, this court may, nevertheless, address Allstate's request. The stated purpose of the amendment to the rule is to provide notice to the appellant "that the court is actually contemplating such measures." Fed.R.App.P. 38, Advisory Committee Notes. An equivalent of the requisite notice has been communicated to Simmons in this appeal because the bulk of the appellant's reply brief is devoted to responding to Allstate's request for sanctions. Consideration of that request in this matter would not, therefore, prejudice the appellant or denigrate the value of the recent amendment to the rule.

Arguably, the appellant's assignment of error concerning the district court's ruling on its ability to assert *in personam* jurisdiction over Maurice Cole could be considered a legitimate attempt to challenge a controverted issue. That contention, however, would not necessitate the participation of *Allstate* in this appeal. The one issue relating to Allstate that Simmons advances is, moreover, patently without merit. It is inconceivable that Simmons could have withstood a motion for summary judgment by Allstate had the plaintiff attempted to recover money even under the temporary insurance agreement issued to Journe by the company. To believe that Allstate was liable to the plaintiff under a $1,000,000 policy that was never in existence and that Simmons knew, at least three months prior to filing her claim for benefits, was not in existence is, therefore, even more far-fetched.

Furthermore, the court is offended by the appellant's apparent attempt to conceal the fact that an amended complaint was filed in the district court, by failing to include it in the joint appendix or to note its existence in her initial brief filed on appeal. Given the fact that the amended complaint seriously undermines the *bona fides* of the appellant's case on appeal and the fact that it was specifically relied upon by the district court in granting summary judgment to Allstate, its complete omission in the documents filed with this court on appeal can hardly be taken as a mere oversight.

In *WSM, Inc. v. Tennessee Sales Co.,* 709 F.2d 1084, 1088, (6th Cir.1983), we noted, "With courts struggling to remain afloat in a constantly rising sea of litigation, a frivolous appeal can itself be a form of obscenity. Rule 38 should doubtless be more often enforced than ignored in the face of a frivolous appeal." Twelve years after that case was reported, the situation has clearly gotten worse and not better. Simmons's attempt to prolong litigation of what appears to be a "nuisance suit" against Allstate by filing this appeal is just the type of action that exacerbates the oppressive caseloads already inundating the federal courts. We conclude that the appellant should properly be penalized for her abuse of the judicial process by paying double costs and attorney's fees related to Allstate's participation in this appeal.

---

**3.** Prior to December 1, 1994, Fed.R.App.P. 38 stated, "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee."

532

For the reasons stated above, the judgment of the district court is **AFFIRMED** in all respects. In view of our determination that the appellant should be sanctioned for prosecuting a frivolous appeal against Allstate, this case is **REMANDED** to the district court for such additional proceedings as are necessary to impose upon Simmons double costs and attorney's fees related to Allstate's participation in this appeal.